[No. G009966. Fourth Dist., Div. Three. Dec. 18, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
TERRY GREGORY WEDDLE, Defendant and Appellant.

C<small>OUNSEL</small>

Fern M. Laethem, State Public Defender, under appointment by the Court of Appeals and Lisa McLeod, Deputy State Public Defender, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, and Robert M. Foster, Deputy Attorney General, for Plaintiff and Respondent.

O<small>PINION</small>

**MOORE, J.**—Terry Gregory Weddle (defendant) was convicted after a jury trial of first degree murder, second degree burglary, and two counts of felony hit and run. In a bifurcated court trial, three prior terms of imprisonment were found to be true. He was sentenced to an indeterminate term of twenty-five years to life for the murder plus three consecutive one-year terms for the priors. Sentence on the remaining counts was imposed and stayed. On appeal, defendant contends his punishment violates the proscriptions against cruel and unusual punishment found in both the federal and state Constitutions.

I

*Facts*

On February 6, 1989, an employee of Mervyn's department store in Tustin saw defendant running from the men's department toward the exit, carrying

an armful of clothes. He followed and watched as defendant threw the clothes into a green Datsun which was parked in a fire lane, blocking a wheelchair ramp and facing oncoming traffic with its engine running and its driver's door open.

During this time, Richard O'Rourke drove into the parking lot accompanied by his wife and son. After seeing defendant throw the clothes into the green Datsun, he instructed his wife to notify the store manager and then followed as defendant rapidly left the scene. O'Rourke chased defendant for approximately two and one-half miles through the streets of Tustin and Santa Ana, during which defendant reached speeds of 60 miles an hour and ran several stop signs and red lights.

After swerving into oncoming traffic several times, defendant ran another red light at the intersection of Chestnut and Grand Streets in Santa Ana. Juan Mora Diaz's car, which contained Diaz's son and his nephew, Pedro Rangel Armas, entered the intersection simultaneously on a green light. As O'Rourke followed and other witnesses watched, defendant collided with Diaz's vehicle while traveling at approximately 65 miles per hour. Armas was killed and Diaz and his son were injured. After the two cars came to rest, defendant ran away. One of the witnesses caught him, and asked why he was running away. He replied that someone was chasing him. Officers responding to the scene found the gear shift of defendant's car in reverse with its backup lights on.

## II

### *Proportionality Under the Federal Constitution*

In *Harmelin* v. *Michigan* (1991) 501 U.S. __ [115 L.Ed.2d 836, 111 S.Ct. 2680], the United States Supreme Court upheld a mandatory sentence of life imprisonment without parole for possession of more than 650 grams of cocaine. The court's five-to-four plurality opinion leads us to conclude that the length of a sentence of imprisonment is largely a matter of legislative prerogative, and cannot violate the Eighth Amendment in any but the rarest cases.[1] (*Id.* at pp. __-__ [115 L.Ed.2d at pp. 866-887] (conc. opn. of Kennedy, J.).)

---

[1]*Harmelin* presents the interpretational difficulties inherent in a plurality opinion. Justice Scalia is joined by the Chief Justice in the lead opinion, which holds that the length of a sentence is *purely* a matter of legislative prerogative, and *cannot* violate the Eighth Amendment, which contains no proportionality guarantee. (*Harmelin, supra,* 501 U.S. at pp. __-__ [115 L.Ed.2d at pp. 864-866].) In concluding that *Solem* v. *Helm* (1983) 463 U.S. 277 [77 L.Ed.2d 637, 103 S.Ct. 3001] [a case relied on by defendant for the proposition that the Eighth Amendment proscribes punishment disproportionate to an offender's culpability] was

In tracing the history of the cases which have dealt with the Eighth Amendment in the context of imprisonment, Justice Scalia cites *Rummel* v. *Estelle* (1980) 445 U.S. 263 [63 L.Ed.2d 382, 100 S.Ct. 1133], where a life sentence was imposed under a recidivist statute, for the proposition that *Weems* v. *United States* (1910) 217 U.S. 349 [54 L.Ed. 793, 30 S.Ct. 544] is the only case where the court has applied the Eighth Amendment to the context of imprisonment. (*Rummel* v. *Estelle, supra,* 445 U.S. at p. 272 [63 L.Ed.2d at pp. 389-390].) A careful reading of the opinion indicates that *Rummel* considered *Weems* to involve punishment which was, unlike simple imprisonment, unusual and of a "unique nature," in citing it as the lone example of a successful proportionality challenge outside the context of capital punishment. (*Rummel, supra,* at p. 274 [63 L.Ed.2d at pp. 390-391].)

*Weems,* while not expressly overruled, is of no benefit to defendant here, as it was unique in its facts. The challenged statute from the then Philippine territory required a sentence of 12 to 20 years in chains at hard labor plus lifetime surveillance and disqualification from voting rights, all due to defendant's having made two false entries in a cash book. Though *Weems* could be interpreted as being consistent due to the particular modality of punishment prescribed, the better analysis is simply to treat it as an aberration, which is what Justice Scalia does in *Harmelin* and what the Supreme Court's majority did in *Rummel.* (*Harmelin, supra,* 501 U.S. at pp. __-__ [115 L.Ed.2d at pp. 863-864].)

■ The Supreme Court had previously held that *intercase* proportionality review[2] of sentences involving death draws no support from the Constitution. (*McCleskey* v. *Kemp* (1987) 481 U.S. 279, 306 [95 L.Ed.2d 262,

wrongly decided, Justice Scalia traces the history of the Eighth Amendment and concludes its adopters intended only to limit certain modalities or methods of punishment and not to guarantee against disproportionate sentences in general. (*Harmelin, supra,* at pp. __-__, __-__ [115 L.Ed.2d at pp. 845-847, 854-862].) Reasserting that "death is different," the opinion upholds intracase proportionality review when a death sentence is meted out. However, Justice Scalia refuses to extend the Eighth Amendment ban on cruel and unusual punishment beyond the death penalty to cases involving imprisonment. (*Id.* at p. __ [115 L.Ed.2d at p. 864].)

In contrast, Justice Kennedy is joined by Justices O'Connor and Souter in a concurring opinion which recognizes a narrow noncapital proportionality principle to the extent that the Eighth Amendment forbids sentences which are *grossly* disproportionate. (*Harmelin, supra,* 501 U.S. at pp. __-__ [115 L.Ed.2d at pp. 866-869].) It acknowledges that substantial (but not complete) deference must be given to legislative determinations regarding the length of sentences, and recognizes intracase and intercase proportionality only in rare cases, of which *Solem,* which the concurrence does not purport to overrule, is one. (*Id.* at pp. __-__ [115 L.Ed.2d at pp. 869-873].)

[2]By *intercase* proportionality, we mean comparative proportionality, involving both intra- and interjurisdictional comparative analyses (comparing the sentence to those for other crimes in the same jurisdiction and to those for the same crime in different jurisdictions). By

287-288, 107 S.Ct. 1756]; *Pulley* v. *Harris* (1984) 465 U.S. 37, 42-44, 50-51 and fn. 5 [79 L.Ed.2d 29, 35-37, 104 S.Ct. 871].)[3] ██ Justice Scalia's lead opinion in *Harmelin, supra*, 501 U.S. __ [115 L.Ed.2d 836, 111 S.Ct. 2680], states that *intracase* proportionality review of sentences not involving the death penalty is also not required under the federal Constitution. (*Id.* at pp. __-__ [115 L.Ed.2d at pp. 864-865].)[4] In contrast, Justice Kennedy's concurring opinion indicates that intracase proportionality may be required, but only in those exceptionally rare cases where the sentence is "grossly disproportionate." (*Id.* at pp. __-__ [115 L.Ed.2d at pp. 866-869].) Curiously, the concurrence seems to indicate that intercase proportionality review may be required as well in such cases. (*Id.* at p. __ [115 L.Ed.2d at p. 872]; compare *Pulley* v. *Harris, supra*, 465 U.S. at p. 50 [79 L.Ed.2d at p. 40].)

 Accordingly, we find that comparative or *intercase* proportionality review is not required under the federal Constitution. To the extent that *intracase* review remains viable, we do not find this to be one of the rare cases where the sentence was "grossly disproportionate" to the crime. (See discussion pt. III, *infra*.)

### III

### *Proportionality Under the State Constitution*

If our state were only required to follow the mandate of the United States Supreme Court and its interpretation of federal constitutional principles, our

*intracase* proportionality, we mean an analysis based only on the nature and facts of the crime and the offender, including his background and individual culpability. (See *Harmelin, supra*, 501 U.S. at pp. __-__ [115 L.Ed.2d at pp. 870-873] (conc. opn. of Kennedy, J.); see also (*Solem* v. *Helm, supra*, 463 U.S. at pp. 290-292 [77 L.Ed.2d at pp. 649-650].)

[3]These cases hold that intercase proportionality review is not constitutionally required in the context of the death penalty. Though, as Justice Scalia points out in *Harmelin*, death and imprisonment are totally distinct in terms of the Eighth Amendment, we see no reason why intercase review should be treated differently in the context of a sentence of imprisonment from that of a sentence of death. Not required when death is imposed, we see no reason to require comparative review when imprisonment is imposed.

[4]Defendant cannot complain of the retroactive application of *Harmelin* since the trial court did undertake an intracase proportionality review under the auspices of the California cases and the California Constitution (see discussion pt. III, *infra*). In any event, newly declared constitutional rules of criminal procedure must be applied retroactively to cases not yet final. (*Griffith* v. *Kentucky* (1987) 479 U.S. 314 [93 L.Ed.2d 649, 107 S.Ct. 708].) Whether the rule enunciated in *Harmelin* constitutes a "clear break" from prior precedent is immaterial; "a new rule . . . is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." (*Griffith* v. *Kentucky, supra*, at p. 328 [93 L.Ed.2d at p. 661].)

discussion might be over. In fact, this is in part what Proposition 115 attempted to do. It purported to amend article I, section 24 of the California Constitution to require that certain enumerated criminal law rights, such as the prohibition against cruel or unusual punishment, be construed in a manner consistent with the federal Constitution. However, our Supreme Court, in *Raven v. Deukmejian* (1990) 52 Cal.3d 336 [276 Cal.Rptr. 326, 801 P.2d 1077], determined that this provision constituted an invalid constitutional revision rather than an amendment, and struck it down. (*Id.* at p. 355.)[5] Therefore, defendant's request for proportionality review must also be governed by our own Constitution and case law, and is not precluded by *Harmelin, supra,* 501 U.S. __ [115 L.Ed.2d 836].

California cases, relying on federal cases interpreting the Eighth Amendment, have declined to find that comparative, *intercase* proportionality review is required under the state Constitution.[6] (*People v. Cox* (1991) 53 Cal.3d 618, 690 [280 Cal.Rptr. 692, 809 P.2d 351]; *People v. Kaurish* (1990) 52 Cal.3d 648, 716 [276 Cal.Rptr. 788, 802 P.2d 278]; *People v. Poggi* (1988) 45 Cal.3d 306, 348 [246 Cal.Rptr. 886, 753 P.2d 1082]; *People v. Rodriguez* (1986) 42 Cal.3d 730, 777-779 [230 Cal.Rptr. 667, 726 P.2d 113].) ■ As for *intracase* proportionality review, "Imposition of a sentence 'grossly disproportionate to the offense for which it was imposed' is a violation of the prohibition against cruel or unusual punishment under article I, section 17, of the California Constitution." (*People v. Kaurish, supra,* 52 Cal.3d at p. 716, quoting *People v. Dillon* (1983) 34 Cal.3d 441, 478 [194 Cal.Rptr. 390 [668 P.2d 697].) The issue here is whether a sentence of 25 years to life on the substantive offense of first degree murder under a felony-murder theory is disproportionate to the nature of the offense and to defendant's culpability in this case.

The review defendant asks us to undertake affects the separation of powers between the judicial and legislative branches. Findings of disproportionality have occurred with exquisite rarity in the case law. Because it is the Legislature which determines the appropriate penalty for criminal offenses,

---

[5] Our own Constitution forbids "cruel *or* unusual punishment," whereas the federal Constitution precludes punishment that is "cruel *and* unusual." (Italics added.) This distinction ought be construed as purposeful and substantive rather than merely semantical (*People v. Anderson* (1972) 6 Cal.3d 628, 636-637 [100 Cal.Rptr. 152, 493 P.2d 880]), and further points out the need for a separate analysis under California constitutional principles.

[6] Of course, while we again note that Justice Kennedy's concurrence in *Harmelin, supra,* 501 U.S. __ [115 L.Ed.2d 836], seems to indicate that, in certain rare circumstances, intercase proportionality review may be required, we are compelled to follow an otherwise clear line of state and federal authorities which have not been overruled and which have held to the contrary. While these cases involve the death penalty, there is no reason in logic or law to preclude their applicability to sentences of imprisonment. (See discussion pt. II, *supra.*)

defendant must overcome a "considerable burden" in convincing us his sentence was disproportionate to his level of culpability. (*People* v. *Bestelmeyer* (1985) 166 Cal.App.3d 520, 529 [212 Cal.Rptr. 605].) Here, the trial court refused to find that defendant's sentence was disproportionate. Like the trial court, we are authorized to consider proportionality based on the facts. (See *People* v. *Leigh* (1985) 168 Cal.App.3d 217, 223 [214 Cal.Rptr. 61]; 3 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Punishment for Crime, § 1336, pp. 1559-1560.)

Defendant relies on *In re Lynch* (1972) 8 Cal.3d 410, 424-427 [105 Cal.Rptr. 217, 503 P.2d 921] and *People* v. *Dillon, supra*, 34 Cal.3d at pages 478-479 in arguing his 25-year to life sentence for first degree murder was disproportionate to the nature of the offense and his individual culpability.

*Lynch* held an indeterminate sentence of one year to life for recidivists who commit indecent exposure under Penal Code section 314 was void as cruel or unusual punishment. Though the court acknowledged that the judiciary should not, as a rule, interfere with the Legislature's determination of sentences for crimes, a penalty which was "out of all proportion to the offense" could violate article I, section 6 (now art. I, § 17) of the Constitution. In order to do so, the penalty would have to be "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch, supra*, 8 Cal.3d at p. 424, fn. omitted.)

In *People* v. *Dillon, supra*, 34 Cal.3d 441, our Supreme Court reaffirmed *Lynch* in a plurality opinion declaring life imprisonment for first degree murder based on a felony-murder theory was excessive under the facts of the case, and the offense was reduced to second degree murder. In *Dillon*, an immature 17-year-old defendant shot and killed an individual guarding a marijuana crop which defendant was trying to steal. As the victim advanced on him with a shotgun, defendant fired his rifle out of fear and panic. Both the judge and the jury believed that the sentence was excessive in relation to defendant's culpability. (*Id.* at p. 487.)

*Dillon*, relying on *Lynch*, establishes a "two-prong" analysis. First, the crime itself must be reviewed, both in the abstract and in view of the totality of the circumstances surrounding its commission, "including such factors as its motive, the way it was committed, the extent of defendant's involvement, and the consequences of his acts . . . ," to determine whether a particular punishment is grossly disproportionate to the crime for which it is inflicted. (*People* v. *Dillon, supra*, 34 Cal.3d at pp. 478-479; see also *In re Foss* (1974) 10 Cal.3d 910, 919-920 [112 Cal.Rptr. 649, 519 P.2d 1073]; *In*

*re Lynch, supra,* 8 Cal.3d at p. 425.)[7] Secondly, the court must consider "the nature of the offender" and inquire "whether the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind." (*People* v. *Dillon, supra,* 34 Cal.3d at p. 479; see also *In re Lynch, supra,* 8 Cal.3d at p. 437.)[8]

█ When viewed in the abstract, commercial burglary presents a risk of violence.[9] The chances are great that there will be a confrontation between

---

[7]California has a "disparate sentence" statute (Pen. Code, § 1170, subd. (f)), which "was adopted to promote the uniform-sentence goals of the determinate sentencing law . . . ." (*People* v. *Allen* (1986) 42 Cal.3d 1222, 1286 [232 Cal.Rptr. 849, 729 P.2d 115].) It requires the Board of Prison Terms to review all determinate sentences "by statistical simulation and review of comparable cases," to determine whether a given sentence is disparate. If a finding of disparity is made, the board must notify the trial judge, who then must "conduct a new sentence hearing, in which he gives 'great weight' to the board's finding. . . ." (*Ibid.*) This law applies only to determinate sentences, but more importantly vests this requirement of intercase proportionality or comparative review with the Board of Prison Terms. It is not authority, however, for the proposition that a *court* must engage in such analysis in the first instance at sentencing.

In addition, the type of comparative review the statute requires, "comparison with the sentences imposed in similar cases. . . ," is uniquely suited to the board. (Pen. Code, § 1170, subd. (f)(1).) This is not, however, the same kind of comparative review discussed in *Lynch* and *Dillon.*

[8]*Lynch* is authority for intercase proportionality review, comparing "the challenged penalty with the punishments prescribed for the same offense in other jurisdictions . . . ," and ascertaining "whether more serious crimes are punished in this state less severely than the offense in question. . . ." (*People* v. *Frierson* (1979) 25 Cal.3d 142, 183 [158 Cal.Rptr. 281, 599 P.2d 587], citing *In re Lynch, supra,* 8 Cal.3d at pp. 426-427; see also *People* v. *Jackson* (1980) 28 Cal.3d 264, 317 [168 Cal.Rptr. 603, 618 P.2d 149].) This is comparative review, pure and simple. While *Dillon* does not rely on either method of comparative review in determining the sentence to be disproportionate, it does cite these methods and *Lynch,* from which they were derived, with approval. (*People* v. *Dillon, supra,* 34 Cal.3d at pp. 487-488 and fn. 38.) We note, however, that these methods are cited in dictum, along with a comparison to the sentences of defendant's accomplices. While neither *Lynch* nor *Dillon* has been expressly overruled to the extent they validate intercase or comparative proportionality review, later cases have clearly held, at least in the context of the death penalty, that such review is not *required* by our Constitution. (See *ante,* p. 1196.) *Dillon* indicates that such comparisons are "instructive" (*People* v. *Dillon, supra,* 34 Cal.3d at p. 487, fn. 38), and it may therefore be *permissible* for a court asked to rule on whether a sentence is disproportionate to engage in such review. However, we decline to do so.

[9]Though burglary presents a risk of violence, this should not be confused with a finding of inherent dangerousness to life. Burglary is one of the underlying offenses enumerated in Penal Code section 189 which require a charge of murder when a homicide occurs. Only when the underlying offense is one other than the six offenses listed in section 189 must the offense be inherently dangerous in the abstract to invoke the felony-murder rule, and then the crime is second degree felony murder. (See *People* v. *Patterson* (1989) 49 Cal.3d 615, 620-622 [262 Cal.Rptr. 195, 778 P.2d 549].) Inherent dangerousness to life is defined as " 'a *high probability* that [the offense] will result in death.' " (*Id.* at pp. 626-627, quoting *People* v. *Watson* (1981) 30 Cal.3d 290, 300 [179 Cal.Rptr. 43, 637 P.2d 279].) A commercial burglary, while not

the perpetrator and someone entrusted with safeguarding the property; obviously, when such confrontations occur, the potential for violence is enhanced.

Defendant argues he was no more than a petty thief, and a technical application of the burglary statute made him a first degree murderer. He misses the point. He is not being punished for committing a theft or a burglary, but for committing a homicide. His punishment is not disproportionate in that the risk of such an occurrence was foreseeable. But it is the fact his actions directly led to the commission of a homicide which properly exposes him to the imposition of a greater penalty.

Thus, looking at the crime in the abstract, imposition of a sentence of 25 years to life is not grossly disproportionate to the crime and does not constitute cruel or unusual punishment. (Cal. Const., art. I, § 17.)

Viewing the totality of circumstances surrounding the commission of the offense, we note defendant created a potentially dangerous situation by facilitating his ultimate getaway. He parked in a fire zone facing oncoming traffic with his engine running, and ultimately sped off with his booty. He obviously premeditated the entire burglary scenario, and though he most certainly did not premeditate the killing, it was foreseeable that a death might occur. Defendant's driving, which included a gross disregard for traffic laws and the well-being of others, culminated in the death of one individual and injury to two others. Any one of defendant's violations could have caused death or serious injury, and under the circumstances, the fact only one person was killed was fortuitous.

In the second prong of our analysis, we must focus on the particular person before the court and ask whether the punishment imposed is "grossly disproportionate to the defendant's individual culpability as shown by such factors as . . . age, prior criminality, personal characteristics, and state of mind." (*People* v. *Dillon, supra,* 34 Cal.3d at p. 479.) While the "individual culpability" of the 17-year-old high school student in *Dillon* warranted a reduction in the degree of murder and the corresponding sentence, we find no such mitigating factors here. Defendant had spent much of his adult life in custody, having been imprisoned on four separate occasions and having received probationary grants nine different times. Though none of his prior convictions involved violence, his 25-year history of criminal conduct distinguishes him from the immature minor in *Dillon.* The trial court found the punishment appropriate, stating: "[Defendant] . . . has not led an exemplary

---

creating a high risk of death, certainly creates a risk of violence, and therefore some risk of death.

life. He is beyond the tender years of the defendant in the *Dillon* case. The considerations of the *Dillon* case simply do not support [defendant's] position." We agree.

Viewing the nature of the crime, the nature of the criminal, and the statutory directive regarding the appropriate sentence, we find no constitutional disproportionality.

### Conclusion

The judgment is affirmed.

Sonenshine, Acting P. J., and Wallin, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 18, 1992.