Filed 10/31/14  P. v. McNatt CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  The opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>KENNETH WAYNE MCNATT,<br><br>    Defendant and Appellant. | G049253<br><br>(Super. Ct. No. 13NF2205)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Richard F. Toohey, Judge.  Affirmed.

Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Anthony DaSilva and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

A jury convicted defendant Kenneth Wayne McNatt of three counts of lewd acts on a child under the age of 14 years (Pen. Code, § 288, subd. (a); all statutory citations are to the Penal Code unless noted otherwise) and found he committed sexual offenses against more than one victim (§ 667.61, subds. (b), (c) & (e)(5)). The trial court found McNatt suffered a prior conviction for a sex offense (§ 667.61, subds. (a), (d)(1)), that also constituted a serious felony (§ 667, subd. (a)(1)). McNatt contends the trial court abused its discretion under Evidence Code section 352 by admitting evidence he committed an uncharged act of sexual abuse (Evid. Code, § 1108 [section 1108]). He also complains section 1108 violates due process, and his sentence of 30 years to life constitutes cruel and unusual punishment. For the reasons expressed below, we affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

In 2000 and 2001, Samantha R. (born Dec. 1993), six and seven years old at that time, lived in Anaheim with her mother Helen, father, two brothers, and three sisters, B., Christina, and Joanna. Helen worked with McNatt and McNatt's girlfriend, Lisa Bickel. Bickel had four sons around the same ages as Samantha and her siblings. For a period of several months, McNatt lived with Helen's family, staying in a spare bedroom.

McNatt sexually abused Samantha and her older sister Christina while residing with their family. He inserted his fingers into Samantha's vagina on several occasions. Sometimes McNatt rocked Samantha back and forth on his lap while they were both fully clothed and Samantha felt his erect penis against her. On one occasion McNatt slept in the living room and told Samantha to get under the covers with him. When she complied McNatt removed her clothes and unsuccessfully attempted to insert his penis into her vagina.

During the same time period, Christina recalled an occasion when McNatt had her sit on his lap. He rubbed her back, and she thought she could feel McNatt's penis

2

under her.  When someone came into the room, McNatt let go of Christina, and she got up and left.

Samantha and Christina did not immediately report McNatt's conduct. Samantha feared no one would believe her and something might happen to her sisters, while Christina "brushed it off."  In 2010, when Samantha and her family lived in Oregon, she disclosed the abuse to Joanna.  During a police interview, Samantha described the crimes and recalled that McNatt always wore cut-off shorts.

Around 1989 and 1990, Cara R., seven years old at the time, lived with her parents in San Diego County.  McNatt, around 21 years old at the time, lived with his parents in the same condominium complex.  The families socialized together.  On one occasion, McNatt took Cara to a movie.  During the movie, McNatt rubbed Cara's vaginal area with his fingers beneath her underwear.

McNatt denied committing the charged crimes when he testified in his defense.  McNatt also denied ever living with Helen's family.  He acknowledged going to Helen's home for barbeques on seven or eight occasions, the first three or four times accompanied by Bickel and her sons.  He attended the last three or four barbeques with male friends from work.  He recalled meeting a man at Helen's named Michael Uribe, and noticed the name Cesar or Alcazar tattooed on Uribe's arm.  McNatt claimed he was never alone with Helen's children and denied inappropriate touching or lewd conduct with either Samantha or Christina.  He also claimed never to have owned cut-off shorts.

Bickel testified she had known McNatt since about 1992.  She and McNatt lived in La Habra with Bickel's four sons in the fall of 2000.  McNatt supervised Bickel and Helen, who worked as telemarketers at a timeshare company.  Bickel never saw McNatt have physical contact with Helen's daughters.  During barbeques at Helen's home, Helen's daughters interacted with a male in his mid-20's named Cesar or Alcazar. This man did not have much contact with the adults and spent most of his time on the couch in the living room watching television.  He often wore patterned, cut-off shorts and

3

a tank top. McNatt did not own cut-off shorts while Bickel lived with him. McNatt and Bickel had no interaction with Helen's children outside of the barbeques at Helen's house.

Robert Anderson also worked at the telemarketing company and often drove McNatt to and from work. At some point, Bickel moved to Louisiana and McNatt moved into a motel room with a friend. On three or four occasions in 2001, Anderson and McNatt went to barbeques at Helen's house together. Anderson and McNatt played pool in the garage with other adults. Anderson never saw McNatt alone with the children at Helen's residence.

Following trial in September 2013, the jury convicted McNatt as noted above. The court imposed an indeterminate term of 25 years to life on one of the lewd act counts related to Samantha, concurrent 25 years to life terms for the other two counts, and added a five-year term for the section 667, subdivision (a) enhancement for a total prison term of 30 years to life.

II

DISCUSSION

A.   *The Trial Court Did Not Abuse Its Discretion under Evidence Code Section 352 by Admitting Evidence of Uncharged Sexual Misconduct*

McNatt contends the trial court abused its discretion under Evidence Code section 352 by admitting evidence he sexually abused Cara.

Section 1108 provides, "(a) In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." Evidence Code section 352 provides, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b)

4

create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

In *People v. Falsetta* (1999) 21 Cal. 4th 903, 916 (*Falsetta*), the Supreme Court described the "careful weighing process" trial courts must employ under Evidence Code section 352. "Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*Falsetta*, *supra,* at pp. 916-917; *People v. Christensen* (2014) 229 Cal.App.4th 781, 798-799 (*Christensen*).)

McNatt contends the trial court abused its discretion because the prior act of "digital skin-on-skin touching of" Cara's vagina was "far more inflammatory than the single instance of touching, through clothing" of Christina "and most of the conduct with Samantha." (See *Christensen*, *supra*, 229 Cal.App.4th 799 [trial courts must consider whether inflammatory nature of uncharged conduct would unduly prejudice defendant].) We disagree. While the contact with Christina did not progress as far as the contact with Cara, Samantha testified McNatt inserted his fingers into her vagina on several occasions, and once tried to insert his penis. The evidence concerning Cara was not so inflammatory that it denied McNatt a fair trial. (See also *People v. Jones* (2012) 54 Cal.4th 1, 49 [admissibility under section 1108 does not require that the sex offenses be similar; it is enough the charged offense and the prior crimes are sex offenses as defined by the statute].) McNatt does not suggest the court should have excluded particular irrelevant or inflammatory details surrounding the offense against Cara. (See

*People v. Holford* (2012) 203 Cal.App.4th 155, 170 [trial courts should consider the "'availability of less prejudicial alternatives'" including admitting some but not all of the defendant's other sex offenses or excluding irrelevant and inflammatory details surrounding the offense, but no authority requires the trial court to offer evidentiary alternatives].)  McNatt therefore fails to show the trial court abused its discretion because the evidence concerning Cara was less inflammatory than the evidence supporting the charged crimes involving Samantha.

McNatt also argues "there was also a high likelihood [the] jury was distracted by the evidence of the prior conduct and that the jury misapplied the evidence to an improper purpose."  McNatt cites instructions that "require[] the jury to apply an entirely different and lesser standard of proof [preponderance of the evidence] than that which the jury applied in determining whether" he was "guilty of the charged sex offenses."  He also states there is a "strong likelihood that the jury would be inclined to punish [him]" for the prior misconduct.

We find this contention unpersuasive.  The jury instructions did not misstate the prosecution's burden of proof or allow the jury to convict McNatt of the charged counts based on a preponderance of the evidence in violation of his constitutional right to due process.  Jurors were told the uncharged acts evidence, if found true by a preponderance of the evidence, was not sufficient by itself to prove beyond a reasonable doubt he committed the charged crimes.[1]  As McNatt notes, the jury learned

---

[1]    The trial court instructed the jury:  "The People presented evidence that the defendant committed the crime of lewd act upon a child under 14 that was not charged in this case. . . . [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offense. . . . [¶] . . . If you decide that the defendant committed the uncharged offense, you may but are not required to conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit lewd act upon a child under 14 as charged here.  If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence.  It is not

6

he pleaded guilty in Cara's case.  There is no basis to assume the jury felt it needed to take up the task "of vindicating unaddressed wrongs" against Cara by "giving unwarranted weight to this evidence."  As for McNatt's claim evidence of Cara's abuse consumed undue time, we note Cara's testimony covered only 10 pages in the reporter's transcript, and as McNatt acknowledges, Cara was the only witness in the matter.

McNatt also complains the prior act was remote in time.  "The event involv[ing] Cara occurred approximately 20 years prior to . . .  trial in the current [case].  As defense counsel pointed out during argument, it was impossible for the defense to find impeachment witnesses after so many years.  Furthermore, it was impossible for [defendant] to produce evidence to prove lack of opportunity to commit the prior offense.  In sum, the fact that the uncharged conduct occurred so far in the past rendered the use of this evidence to prove propensity highly unfair and prejudicial to appellant's defense."

We need not dwell on McNatt's argument he suffered undue prejudice because the remoteness of the prior incident involving Cara prevented him from locating witnesses to impeach Cara's accusation.  McNatt's guilty plea to sexually abusing Cara completely undermines his argument.  Nor do we discern an abuse of discretion when the trial court rejected McNatt's claim the 1990 prior bad act held little probative value because it was too remote.  Although the trial took place in 2013, the charged crimes occurred in 2000, only 10 years removed from the time McNatt abused Cara.  With 10 years as the relevant time frame, the trial court reasonably could conclude the probative value of Cara's evidence outweighed any potential prejudice.  McNatt's claim the trial court abused its discretion in admitting the evidence concerning Cara is therefore without merit.

sufficient by itself to prove that the defendant is guilty of the charged sex offenses. . . . [¶] Do not consider this evidence for any purpose [except] for the limited purpose of determining the defendant's credibility."

7

B.   *Constitutionality of Section 1108*

McNatt also argues "section 1108 deprives criminal defendants of due process of law and equal protection of law under the state and federal [C]onstitutions." He makes this argument to preserve the issue for further review in the federal courts because the California Supreme Court consistently has rejected due process challenges to section 1108.  (*Falsetta, supra,* 21 Cal.4th at pp. 907, 916-922; see *People v. Loy* (2011) 52 Cal.4th 46, 60 [declining to reconsider *Falsetta*].)  We are bound to follow our Supreme Court decisions.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

*People v. Fitch* (1997) 55 Cal.App.4th 172 rejected McNatt's equal protection claim that a criminal defendant charged with a sex offense is treated differently from those charged with other crimes:  "Defendant contends Evidence Code section 1108 violates equal protection because it treats those accused of sex offenses differently from those accused of other crimes.  He asserts the statute is subject to a strict scrutiny analysis because it infringes upon his constitutionally protected rights to a fair trial, due process, and the requirement that the case be proved beyond a reasonable doubt. [¶] . . . An equal protection challenge to a statute that creates two classifications of accused or convicted defendants, without implicating a constitutional right, is subject to a rational-basis analysis.  [Citation.]  [¶]  Evidence Code section 1108 withstands this relaxed scrutiny.  The Legislature determined that the nature of sex offenses, both their seriousness and their secretive commission which results in trials that are primarily credibility contests, justified the admission of relevant evidence of a defendant's commission of other sex offenses.  This reasoning provides a rational basis for the law." (*Id.* at pp. 184-185.)  We discern no basis to depart from the reasoning of *Fitch*.

C.   *Cruel or Unusual Punishment*

McNatt argues his sentence of 30 years to life violates federal and state constitutional prohibitions on cruel or unusual punishment.  He states his "offenses did

8

not involve any loss of life, bodily injury, or violence," and "the most significant factor in appellant's case is his lack of any criminal or social history involving violence. Nor did the current offenses involve any violence or significant physical harm to the victims. For the most part, the offenses involved fondling. Additionally, it is clear from 19 letters written in support of [a] lenient sentence and received in evidence at the time of the sentencing hearing, that appellant has led a productive, hard working life and that he has the respect and admiration of many friends and family members."

Punishment that is grossly disproportionate to the offender's culpability violates constitutional norms prohibiting "cruel and unusual" (U.S. Const., 8th Amend.) and "cruel or unusual" (Cal. Const., art. I, § 17) punishment. (*Harmelin v. Michigan* (1991) 501 U.S. 957, 997 (*Harmelin*) (conc. opn. of Kennedy, J.) [Eighth Amendment "encompasses a narrow proportionality principle"]; *People v. Dillon* (1983) 34 Cal.3d 441, 478 ["punishment may violate the constitutional prohibition not only if it is inflicted by a cruel or unusual method, but also if it is grossly disproportionate to the offense for which it is imposed"].) Because "in our tripartite system of government it is the function of the legislative branch to define crimes and prescribe punishments" (*In re Lynch* (1972) 8 Cal.3d 410, 414), a defendant bears a "considerable burden" to show the requisite disproportionality. (*People v. Wingo* (1975) 14 Cal.3d 169, 174.) Consequently, such findings "have occurred with exquisite rarity in the case law." (*People v. Weddle* (1991) 1 Cal.App.4th 1190, 1196.)

Preliminarily, McNatt did not raise the issue of cruel, unusual or otherwise disproportionate punishment below. A challenge based on the particular characteristics of the defendant or the offense may be forfeited by failing to raise it. (*People v. Kelley* (1997) 52 Cal.App.4th 568, 583; *People v. DeJesus* (1995) 38 Cal.App.4th 1, 27.)

On the record before us, the jury found McNatt committed sexual offenses against two young girls. He engaged in substantial sexual conduct with Samantha, inserting his finger in her vagina, and attempting to insert his penis. He violated the trust

of these girls and their parents, who at one point considered McNatt to be a friend. True, section 667.61 required the sentencing court to impose indeterminate 25 years to life terms and does not take into consideration a defendant's criminal history or individualized circumstances of the present offenses beyond the facts triggering the enhanced punishment, but these concerns are inapplicable to McNatt, who previously suffered a prior conviction for similar behavior against another young girl. McNatt's criminal history is not insignificant, as he suggests.

Absent evidence of specific facts supporting an "as applied" challenge, McNatt must show the statutory scheme violates constitutional prohibitions on its face. This he cannot do. *Christensen* is instructive on this point. There, the court compared the defendant and his crimes against other arguably more serious and violent offenses in this and other states and found the defendant's claim of cruel and unusual punishment lacked merit: "Viewed along a spectrum, we may find murder, mayhem and torture among the most grave of offenses and petty theft among the least. Considered in this context, lewd conduct on a child may not be the most grave of all offenses, but its seriousness is considerable. It may have lifelong consequences to the well-being of the child. . . . [¶] Furthermore, defendant's offenses were multifold. He was convicted not of one offense, but of five. He molested not one boy, but three. Any one act in isolation was a serious offense. Cumulatively, without a doubt, his offenses were grave. . . . Moreover, as observed in [*Ewing v. California* (2003) 538 U.S. 11, 29], in determining proportionality, the state's choice to deal with repeat offenders in a harsher manner is a penological goal that must be taken into account. . . . Taking these factors into consideration, we cannot conclude that the penalty is harsh in relation to the gravity of the offenses." (*Christensen*, *supra*, 229 Cal.App.4th at pp. 806-807 [potential life sentence for "one who commits repeated molestations against small children [] is not disproportionate to his culpability"]; *Lockyer v. Andrade* (2003) 538 U.S. 63, 77 ["gross disproportionality principle reserves a constitutional violation for only the extraordinary

10

case"].)  *Christensen* also noted, "'The penalties for single offenses . . . cannot properly be compared to those for multiple offenses. . . .'  (*People v. Crooks* (1997) 55 Cal.App.4th 797, 807.)"  (*Christensen*, *supra*, at p. 808.)  McNatt's sentence is not out of proportion to the offenses, does not shock the conscience, nor does it offend fundamental notions of human dignity.  (See also *People v. Meneses* (2011) 193 Cal.App.4th 1087, 1092 [15 years to life sentence for man convicted of single lewd act with his 12-year-old cousin resulting in pregnancy not cruel or unusual].)

### III

### DISPOSITION

The judgment is affirmed.

ARONSON, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

IKOLA, J.