Filed 4/2/15  P. v. Johnson CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B252164 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA379261) |
| v. | |
| SAM JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Sam Ohta, Judge.  Affirmed.

Alex Green, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Sam Johnson of six counts of second degree robbery (Pen. Code, § 211)[1] and five counts of receiving stolen property (§ 496, subd. (a)).  In a bifurcated proceeding, the trial court found that defendant had suffered two prior strike convictions (§§ 667, subds. (b) – (i); 1170.12, subds. (a) – (d)), two prior serious felony convictions (§ 667, subd. (a)(1)), and had served two prior prison terms (§ 667.5, subd. (b)).  The trial court sentenced defendant to a term of 191 years, 4 months in state prison.  On appeal, defendant contends that his sentence is constitutionally excessive under the state and federal constitutions, or in the alternative that his attorney was ineffective for not so contending in the trial court.  We affirm the judgment.

**BACKGROUND**

*December 4 Robberies*

In the early morning hours of December 4, 2010, defendant committed three robberies in the Koreatown area of Los Angeles.  Around 1:35 a.m. that morning, he robbed Tae Uk Joo and his girlfriend, Anna Kim, after they arrived in Joo's car and parked in the gated parking garage of Joo's apartment complex on South Harbor Boulevard.  Defendant showed Joo a silver object, declared that he had a gun, and said that he would shoot unless Joo and Kim gave him everything they had.  Defendant searched Joo's pockets and took several items (a bracelet, watch, notebook, keys, cell phone, and $600 in cash) and also took Kim's cell phone, purse, and a shopping bag.  Defendant fled in a car driven by someone else.

Later that morning, around 3:00 a.m., defendant robbed Joseph Falci as Falci sat in his parked car at Hobart and 7th Streets in Los Angeles.  After using the ruse

---

[1]     All section references are to the Penal Code.

of asking for directions, defendant opened Falci's car door.  Holding one hand in his pocket, he said that he would shoot unless Falci gave him everything he had, He struck Falci in the face several times, ripped off his eyeglasses, and took Falci's wallet, car keys and iPod.

*December 15 Robberies*

On December 15, 2010, defendant committed three additional robberies in Koreatown.  Around 5:45 p.m., wearing a wig with a hat, he robbed Richard Kang in the underground garage of Kang's apartment complex on Elden Avenue.  As Kang opened his car door, defendant grabbed it and held what Kang thought was a weapon to his head.  Defendant demanded that Kang give him all he had and not look at him.  A second man took Kang's wallet, laptop, and other items.  After taking Kang's eyeglasses, the men fled.

Later that evening, again wearing the wig with a hat, defendant robbed Jae Eun Lee and Kwon Jeong as they sat talking in a car on Fifth Street.  Defendant opened the car door, pretended to have a gun, said he was going to shoot, and demanded that the victims give him everything.  Defendant took Jeong's cell phone and wallet, and Lee's glasses, car keys, and wallet.  He also took cameras and a laptop that were in the back seat.

*Defendant's Arrest*

Jeong and Lee immediately reported their robbery to the police.  After Los Angeles Police Officer Jason Adkins arrived, Jeong used a GPS tracking computer program to track the location of his stolen cell phone.  Officer Adkins broadcast the information to other officers, who ultimately stopped defendant.  In the car

3

defendant was driving, the police found the wig and hat used in the robbery, as well as items taken, including Jeong and Lee's wallets.

*Receiving Stolen Property Counts*

On December 16, 2010, the police searched defendant's bedroom in his father's house, which was located about six or seven miles from Koreatown. There, they found items taken in five other Koreatown robberies that occurred in November and December 2010:  the driver's license and checkbook of Sun Young Lee, who was robbed at her beauty salon on November 22; the cell phone of Won Ju Lee, who was robbed on November 27 while sitting in his car; the passport of Jina Jung, who was robbed on December 4 as she opened her car door; a purse belonging to Adoracion Dela Cruz, who was robbed at her apartment building on December 13; and a watch belonging to Gilyong Joo, who was robbed when he was getting out of his car on December 12.

**DISCUSSION**

Defendant contends that his sentence of 191 years, 4 months in state prison violates the federal constitution's Eighth Amendment ban on "cruel and unusual punishment," as well as the similar ban of Article I, section 17 of the California Constitution against "cruel or unusual punishment."  The thrust of his argument is that a sentence of this duration, being so long it "is impossible for a human being to serve," is unconstitutional (*People v. Deloza* (1998) 18 Cal.4th 585, 600-601 (Mosk, J., concurring), especially in light of defendant's prior criminal record, his mental history,[2] and the nature of the current crimes.

---

[2]    At one point in the trial proceedings, the trial court declared a doubt as to defendant's competence to stand trial, suspended criminal proceedings (§ 1368), and

4

As he concedes, however, he did not raise this issue in the trial court. California law is clear that by failing to raise the issue below, defendant forfeited the claim. (*People v. Speight* (2014) 227 Cal.App.4th 1229, 1247-1248, and cases therein cited.) Thus, we decline to address it.

In the alternative, defendant contends that his attorney was ineffective for not moving to reduce his sentence on constitutional grounds. We disagree. To prove ineffective assistance, defendant must show that his attorney's performance fell below an objective standard of reasonableness under prevailing professional norms, and that, in the absence of his attorney's failure, it is reasonably probable that the result of the sentencing proceeding would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 694.) Defendant cannot meet either prong.

First, he cannot show that counsel's failure to raise the constitutional issue in the trial court fell below an objective standard of reasonableness. Justice Mosk's concurrence in *Deloza,* on which defendant relies on appeal, is not an accurate statement of California law, and its reasoning has been rejected. (*People v. Haller* (2009) 174 Cal.App.4th 1080, 1089; *People v. Byrd* (2001) 89 Cal.App.4th 1373, 1383.) Indeed, lengthy determinate sentences such as defendant's have been repeatedly upheld against constitutional challenge. (*People v. Retanan* (2007) 154 Cal.App.4th 1219, 1230.) In the instant case, defendant's attorney moved to strike one or both of defendant's prior strike convictions under section 1385 and *People v. Superior Court* (*Romero*) 13 Cal.4th 497 (*Romero*), arguing in part that defendant's mental health history and his lack of a lengthy record at age 43

appointed an expert to assess defendant's mental condition. The parties later agreed to submit the issue of defendant's competence to the court on the basis of the expert's report, and after reviewing it the court found defendant competent to stand trial and reinstated criminal proceedings.

justified an exercise of discretion to reduce what would otherwise be a three strike sentence. In a thoughtful ruling which we discuss in more detail below, the trial court denied the motion. Thus, defendant's trial counsel can hardly be faulted for abjuring a constitutional claim that had little or no chance of success under the law, in favor of an appeal to the court's discretion under section 1385 and *Romero* to reduce defendant's three strikes sentence – a discretion that is broader than the court's lawful authority to declare a sentence unconstitutional. (See *Ewing v. California* (2003) 538 U.S. 11, 22 [successful Eighth Amendment challenges to noncapital sentences "exceedingly rare"]; *People v. Weddle* (1991) 1 Cal.App.4th 1190, 1196 ["[f]indings of disproportionality [in sentencing under the California Constitution] have occurred with exquisite rarity in the case law"]; cf. *Romero, supra,* 13 Cal.4th at p. 530 [discretion to dismiss a strike under section 1385 is broad, and subject to review only for abuse of discretion].)

Second, defendant cannot meet the prejudice prong of *Strickland*. In ruling on defendant's motion to strike one or more of his strike convictions, the trial court considered and rejected the factors on which defendant relies on appeal. We set forth the trial court's reasoning at length:

> "The defendant suffered two [prior] convictions for robbery in case number BA310214. As I stated, I looked at that file. I went through that file. Three men were charged, Sam Johnson [defendant], Cristopher Govan, and Cordero Frazier (phonetic).

> "In looking at the case history, these two convictions, while sustained in a single case, related to two separate victims on two separate days. In fact, the defendant was charged with four separate armed robberies, takeover style, of businesses late at night. Similar to the current case, it was alleged that these multiple incidents were the act of several men working together making the crime more sophisticated.

6

"The plea transcript shows that the defendant entered a plea of no contest to Counts 8 and 12. Count 8 occurred on September 30th, 2006, with the named victim of Saman Wickarama, W-i-c-k-a-r-a-m-a. Count 12 occurred on October 1st, 2006, with the named victim of Joginder Singh. J-o-g-i-n-d-e-r first name, last name S-i-n-g-h. . . .

"Defendant Johnson's convictions, though from a single case, . . . related to acts against two separate victims committed on two separate days. While not specifically on point, the law is clear, when a perpetrator commits a crime against separate victims in a single incident, Penal Code section 654 is not a bar to multiple punishment. He who commits a crime against multiple victims is conceivably more culpable than a defendant who only commits a crime against a single victim.

"As such, in this court's view, there is nothing in the nature and circumstances of the defendant's prior convictions to suggest he is outside the spirit of the three strikes law.

"As to the nature and circumstances of the current offense, that the crime of committing a series of robberies in the manner committed by the defendant is within the spirit of the three strikes law doesn't require much explanation. Defendant is a serious danger to society, and his brazen and violent actions committed in the instant case are clearly within that spirit.

"As for the defendant's background, character and prospect on the issue of recidivism, defendant's criminal history shows he's had three prior contacts with law enforcement starting in 1990 for a violation of Vehicle Code section 10852, tampering with a vehicle. The defendant was also convicted of theft in 1991 but expunged that in 1998. He was subsequently arrested in 2006, which is the basis of his strike priors.

"This contact with law enforcement was significant. Within the crime of robbery, there are varying degrees of seriousness. Some, perhaps by the use of a push or pull, may take a bicycle from another by force. Then there are those instances where a group of men work together to commit a string of robberies using weapons against

7

multiple victims. While the defendant was not ultimately charged with the use of a weapon personally, the victims told the police the men were armed. The current offenses are similar to his former convictions. While it may be that the defendant has had two significant contacts with the criminal justice system, the arrest in 2006 and the current case, these contacts were not single isolated incidents. Instead, he committed a series of multiple separate crime in both cases. The aggregate, even though two cases, of all that he has done shows he's a most serious recidivist.

"It is clear the defendant has not learned from his past mistakes. Instead, he repeated the same violent tendency. He is a recidivist as a repeat serial robber.

"There is some indication that he suffers from a mental illness and that the defendant is well educated. Of course, the issue of the defendant's mental illness is a factor to be considered in deciding to dismiss a strike prior. . . . However, nothing suggests the defendant's conduct is in anyway mitigated by his mental illnesses or that he is a candidate for rehabilitation through counseling.

"To the contrary, the evidence suggests the defendant was in control of his mind at the time the crimes were committed, has been in control of his mind throughout these proceedings before this court, and has done everything possible to deny his own culpability and the consequences of his actions. I do not see a person who shows any remorse or a desire to steer clear of criminality. To the contrary, the defendant sees himself as a victim, which he clearly is not.

"The background, nature and characteristics of the defendant showed he's exactly the type of person the three strikes law was written to apply. He is squarely within the legislative intent on all three factors. Nothing suggests it is appropriate in the interest of justice to dismiss a strike prior. The trial court will therefore decline to exercise its discretion under Penal Code section 1385 to dismiss any of the defendant's strike priors."

8

Given the court's thorough review of the relevant facts in denying the motion to strike a prior strike conviction, it is not reasonably probable that had defense counsel contended that the sentence was unconstitutional, the trial court would have imposed a lesser sentence. Thus, defendant cannot satisfy the prejudice prong of *Strickland.*

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:


EPSTEIN, P. J.


COLLINS, J.

9