Filed 5/4/16  P. v. Hammond CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>DELVON LUJUAN HAMMOND,<br><br>　　　　Defendant and Appellant. | A142892<br><br>(Solano County<br>Super. Ct. No. FCR295413) |

**I.**

**INTRODUCTION**

Appellant Delvon Lujuan Hammond appeals his sentence of life imprisonment without the possibility of parole as cruel and unusual punishment under both the United States and California Constitutions.  Hammond was convicted of forcible lewd act upon a child under age 14, and sentenced pursuant to a sentencing scheme designed to punish recidivist sex offenders.  We conclude Hammond's statutorily mandated sentence is not grossly disproportionate to his crime under the Eighth Amendment, and does not shock the conscience or offend fundamental notions of human dignity under the California Constitution.  Hammond also argues the trial court failed to make a judicial determination of his ability to pay restitution.  We hold the court did not abuse its discretion in ordering a restitution fine.  We affirm.

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.      *Procedural History*

The Solano County District Attorney's Office charged Hammond with one count of forcible lewd act upon a child in violation of Penal Code section 288, subdivision (b)(1)[1] (count one) and one count of attempted forcible lewd act upon a child in violation of sections 664 and 288, subdivision (b)(1) (count two).  The information alleged enhancements for a prior serious felony (§ 667.61), a qualifying prior sex offense, and a prior strike based upon Hammond's conviction for a violation of section 288, subdivision (a) in 2005.  (§ 667.61, subds. (a)(1), (j)(1), (d)).

Hammond was tried before a jury and found guilty of both counts, and the jury found true Hammond's prior conviction for a lewd act upon a child.

### B.      *Jury Trial*

The victim, M.G. (age 10 at the time), was riding on a scooter from her house when Hammond approached her on Civic Center Drive.  Hammond told her to stop, and she stopped because she thought maybe she had dropped something.  Hammond rode toward her on a bike.  He got off the bike and "grabbed [her] foot and put it in his pants."  She was wearing flip flop sandals and Hammond removed the flip flop from one of her feet.  There was no one around them and M.G. felt scared.  Hammond rubbed her foot on his penis.  She pulled her foot back and tried to ride away on her scooter, but Hammond tried to grab her foot again and force it back down his pants.  She "fought it off" and rode home.  When she got home, she went to her room and cried.  She then told her brother, who informed their mother.

Hammond was wearing an electronic monitoring device at the time of the incident with M.G.  The GPS signal from the device showed his location within 50 feet.  He was at Utah Street and Civic Center Drive at the time M.G. claimed to have been assaulted.

---

[1]  All subsequent statutory references are to the Penal Code.

Hammond carried out a similar assault in 2004 on A.M., who was 12 years old at the time. A.M. was sitting alone in the waiting room at Northbay Hospital in Fairfield when Hammond approached her. A.M. was seated watching television and Hammond sat down next to her. Hammond kneeled down in front of her, pulled his pants down to expose his penis, and grabbed her leg. He removed A.M.'s flip flop sandal and began rubbing his penis on the bottom of her foot. A.M. stated Hammond's penis felt hard. He then began rubbing it on her ankle as well. A.M. began to yell and cry. She kicked Hammond and tried to push him away. As she was screaming and pushing him away, he "was using all his force" to continue rubbing his penis on her. When a security guard came into the room, Hammond pulled up his pants and went to the elevator. Hammond was apprehended shortly thereafter.

## C.     *Sentencing*

The law provides that any person convicted of a sex offense upon a child victim who is under 14 years old who has a prior similar offense, "shall be punished by imprisonment in the state prison for life without the possibility of parole." (§ 667.61, subd. (j)(1).)

Hammond's trial counsel argued section 667.61 was unconstitutional as applied to Hammond because it constituted cruel and unusual punishment. Counsel stressed the limited touching involved in both offenses, that no weapons were used, and the victims were not injured. Counsel argued that Hammond suffered with numerous mental defects since childhood, causing him great difficulty in school. Hammond also had "borderline intellectual functioning."

The prosecutor responded that Hammond was not so lacking in mental abilities that he could not perform in life. Hammond had participated in and completed vocational programs in prison. The prosecution also referenced Hammond's parole violations including the fact that shortly before the incident with M.G., Hammond's parole agent found child pornography on Hammond's phone. Among others sites, he had viewed several Web sites showing young girls with adult men fondling their feet, as well as adult

3

men having sex with young girls.[2]  The prosecution argued that Hammond could not meet the "considerable burden" to demonstrate disproportionality.  Hammond's sentence was mandatory because the jury found the allegation that Hammond suffered a prior conviction for a violation of section 288, subdivision (a) to be true, and this mandated a sentence of life without the possibility of parole.

The presentence report documented the trauma to the victim, who stated she was unwilling to leave home unless she was accompanied by an adult.  M.G. lived near a library and used to ride her bike there, but after the incident she was too afraid and would only go there with her mother.  M.G. had become cautious in public and if she saw someone who resembled Hammond, she would become visibly uncomfortable.

The court found the victim to be particularly vulnerable because she was a child riding her scooter alone in an area where she felt safe near her home.  Hammond used his position as an adult authority figure to cause her to stop.  He pulled her from the scooter and forced her foot into his pants and onto his penis.  The court found "the trauma he's done to her is really immeasurable.  We have evidence that the child that this was done ten years ago to is still traumatized, and we have evidence that this child is traumatized."  The court further noted when Hammond approached M.G., he was on parole for the same activity.

The court found the mandatory sentence was not unconstitutional.  The court stated it was a matter for the Legislature that created the sentencing scheme.  Hammond had managed to be "pretty much self sufficient in his life," and he had completed courses in prison.  The court found there were not sufficient facts in the record to find the punishment was cruel and unusual.

The court sentenced Hammond to determinate terms of eight years on count one (stayed) and eight years on count two with an additional five-year enhancement, for a total determinate term of 13 years.  The court sentenced Hammond under section 667.61,

---

[2]  Respondent included this information in its sentencing memorandum filed in the trial court.  Hammond did not object before the trial court and does not object to respondent's references to this information in its brief on appeal.

4

subdivisions (d) and (j)(1) to an indeterminate term of life without the possibility of parole on count one.

The court ordered restitution in the amount of $10,000. After discussing sentencing credits and sex offender registration, the court ordered Hammond to pay a court security surcharge of $40 and a criminal conviction fee of $30. Counsel then objected "on the basis he has no ability to pay."

## III.

## DISCUSSION

### A.      Hammond's Sentence Does Not Constitute Cruel and Unusual Punishment  Under the State or Federal Constitutions

Hammond contends his sentence constitutes cruel and unusual punishment in violation of both the state and federal Constitutions (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17.) A punishment violates the Eighth Amendment if it involves the "unnecessary and wanton infliction of pain" or if it is "grossly out of proportion to the severity of the crime." (*Gregg v. Georgia* (1976) 428 U.S. 153, 173.) Under the state Constitution, a sentence may constitute cruel and unusual punishment if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424, fn. omitted (*Lynch*).)

Hammond was sentenced pursuant to a sentencing scheme designed to punish recidivist sex offenders. Section 667.61, subdivision (j)(1) codifies the voters' intent that adult sex offenders who commit a second offense on a child under 14 years of age be punished with a sentence of life without the possibility of parole. (§ 667.61, subd. (j)(1).) The statute imposes this penalty whether or not an act of molestation is accomplished by force and includes *any* lewd or lascivious act upon a child.

"California has recognized, and reasonably so, that sex offenders present a serious danger to society because of their tendency to repeat their sexual offenses. Sexual offenses not only invade the deepest privacies of a human being, and thereby may cause permanent emotional scarring, but they frequently result in serious physical harm to, or

5

death of, the victim." (*People v. Meeks* (2004) 123 Cal.App.4th 695, 709.) Both the Legislature and the courts have repeatedly recognized the need " 'to provide children "special protection" from sexual exploitation because they "are 'uniquely susceptible' to such abuse" and "suffer profound harm whenever they are perceived and used as objects of sexual desire. [Citation.]' " (*People v. Murphy* (2001) 25 Cal.4th 136, 146, quoting *People v. Martinez* (1995) 11 Cal.4th 434, 443.)

" 'Recidivism in the commission of multiple felonies poses a manifest danger to society justifying the imposition of longer sentences for subsequent offenses." (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 570, quoting *People v. Ayon* (1996) 46 Cal.App.4th 385, 399, disapproved on other grounds in *People v. Deloza* (1998) 18 Cal.4th 585, 600, fn. 10.)

### 1.      Disproportionality under the California Constitution

"[I]n California a punishment may violate article I, section 6, of the Constitution if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*Lynch*, *supra*, 8 Cal.3d at p. 424.)

"The doctrine of separation of powers is firmly entrenched in the law of California, and a court should not lightly encroach on matters which are uniquely in the domain of the Legislature. Perhaps foremost among these are the definition of crime and the determination of punishment." (*People v. Wingo* (1975) 14 Cal.3d 169, 174.) It is therefore only in the " 'rarest of cases' " that a court may declare a punishment mandated by the Legislature to be " 'unconstitutionally excessive.' " (*People v. Meneses* (2011) 193 Cal.App.4th 1087, 1093.)

Under *Lynch*, we examine (1) the nature of the offense and the offender including the degree of danger to society, (2) compare the punishment with the penalty for more serious crimes in the same jurisdiction, and (3) compare the punishment with the penalty for more serious crimes in other jurisdictions. (*Lynch*, *supra*, 8 Cal.3d at pp. 425–427.) Hammond only addresses the first prong (intracase proportionality), and we therefore

6

need not address the second and third factors (intercase proportionality).[3] (*People v. Weddle* (1991) 1 Cal.App.4th 1190, 1194-1195 & fns. 2 & 3; see also *People v. Ayon*, *supra*, 46 Cal.App.4th at pp. 398-399 [constitutionality determination may be based on nature of the offense and/or offender alone].)

Thus, we first review the crime itself, both "in the abstract" and in view of the totality of the circumstances surrounding its commission, "including such factors as its motive, the way it was committed, the extent of defendant's involvement, and the consequences of his acts." (*People v. Dillon* (1983) 34 Cal.3d 441, 479 (*Dillon*).) Then, we consider the nature of the defendant and inquire whether the sentence is grossly disproportionate to his individual culpability based on his age, criminal history, personal characteristics, and state of mind. (*Id.* at p. 479.)

### a. *Nature of the Offense*

"In conducting this inquiry . . . the courts are to consider not only the offense in the abstract—i.e., as defined by the Legislature—but also 'the facts of the crime in

---

[3] Hammond has presented no evidence regarding sentences imposed for more serious crimes in California, or regarding punishment for similar offenses in other jurisdictions. We note, however, that similar sentences for sexual assault have been upheld on appeal. (See *People v. Cartwright* (1995) 39 Cal.App.4th 1123 [upholding indeterminate term of 375 years to life plus a determinate term of 53 years for sexual assault charges; *People v. Wallace* (1993) 14 Cal.App.4th 651 [rejecting a cruel and unusual punishment challenge to a sentence of 283 years 8 months for sexual assaults on multiple victims]; *People v. Retanan* (2007) 154 Cal.App.4th 1219 [upholding sentence of 135 years to life against a cruel and unusual punishment challenge for defendant's sexual assaults of three young girls]; see also *People v. Alvarado* (2001) 87 Cal.App.4th 178 (*Alvarado*) [upholding a life term for rape committed during a burglary against a challenge the sentence was cruel and unusual punishment].)

"That California's punishment scheme is among the most extreme does not compel the conclusion that it is unconstitutionally cruel or unusual." (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1516.) The sentencing scheme "merely reflects the Legislature's zero tolerance toward the commission of sexual offenses against particularly vulnerable victims. It does not, however, render a defendant's sentence excessive as a matter of law in every case." (*Alvarado*, *supra*, 87 Cal.App.4th at pp. 200–201.)

7

question'. . . ." (*Dillon*, *supra*, 34 Cal.3d at p. 479, quoting *In re Foss* (1974) 10 Cal.3d 910, 919.)

The offense here involved Hammond grabbing a child's foot, putting it down his pants, and rubbing it on his penis. Hammond argues there were no threats made or weapons used, the victim was not physically injured, and it was a single, short incident. Hammond contends that while this offense should be punished, he should not be imprisoned for life without the possibility of parole for this conduct.

Hammond downplays the seriousness of the offenses and the consequences for the victims. Although Hammond did not subject his victims to intercourse or oral copulation, the Legislature did not restrict the statute to conduct Hammond considers more egregious than his own when it made it unlawful to commit any lewd act upon the body of a child under age 14. The two victims at ages 10 and 12 were identified for special protection from sexual exploitation, and Hammond violated the statute when he used their feet for sexual gratification. While it is true Hammond's offenses could have been worse, this does not lessen the seriousness of his contact with these victims.

Further, the fact that neither victim suffered physical harm does not diminish the emotional anguish experienced by both girls. After the molestation, M.G. was afraid to ride her bike near her home and would only go to the library with her mother. She had become cautious in public and if she saw someone who resembled Hammond, she would become visibly uncomfortable. The court recognized the trauma to both victims. "[T]he trauma he's done to her is really immeasurable. We have evidence that the child that this was done ten years ago to is still traumatized, and we have evidence that this child is traumatized."

In terms of societal harm, committing lewd acts upon 10 and 12-year-old girls warrants a substantial penalty, and it is not disproportionate punishment when compared to cases where life sentences have been upheld for non-contact crimes. (See *People v. Mantanez* (2002) 98 Cal.App.4th 354, 364-365 [term of 25 years to life under the Three Strikes law for nonviolent offenses does not constitute cruel and unusual punishment]; *In re Coley* (2012) 55 Cal.4th 524, 530 [imposition of a 25-year-to-life sentence for

8

failing to register as sex offender upon does not constitute cruel and unusual punishment in violation of the federal Constitution]; but see *In re Rodriguez* (1975) 14 Cal.3d 639 [holding sentence was cruel and unusual punishment where defendant had served 22 years for a nonviolent act of child molestation].) "[L]ewd conduct on a child may not be the most grave of all offenses, but its seriousness is considerable. It may have lifelong consequences to the well-being of the child." (*People v. Christensen* (2014) 229 Cal.App.4th 781, 806.)

Hammond's sentence is not based solely on his current offense but upon his recidivism. (*People v. Sullivan*, *supra*, 151 Cal.App.4th at p. 571 ["[The] [d]efendant is not subject to multiple 25-year-to-life sentences merely on the basis of his current offenses alone, but also for his recidivist behavior."]) We, therefore, do not consider Hammond's offense in isolation, but must consider that Hammond has done this before. He was sentenced pursuant to sections 667 and 667.61, which impose harsher sentences on repeat sex offenders. (*People v. Mancebo* (2002) 27 Cal.4th 735, 740-741.) His sentence is "justified by the State's public-safety interest in incapacitating and deterring recidivist felons." (*Ewing v. California* (2003) 538 U.S. 11, 29-30, fn. omitted (*Ewing*).) Hammond's sentence "reflects a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated." (*Id.* at p. 30.)

### b. *Nature of the Offender*

This inquiry "focuses on the particular person before the court, and asks whether the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind." (*Dillon*, *supra*, 34 Cal.3d at p. 479.)

In considering the issue of dangerousness, Hammond admits he poses "some risk to children," even if he did not use a weapon or physically injure the victims. Nevertheless, Hammond contends he has "shown no proclivity to increasing the conduct," but this provides no assurance he will not commit a similar offense in the future. Indeed, his criminal history foreshadows that his conduct is likely to continue if

9

he is released.  Hammond committed the offense against A.M. in 2005 and was sentenced to six years in prison.  When he was paroled he was ordered to wear an electronic monitoring device on his ankle, but this did not prevent him from committing a similar offense against M.G. after being released from custody.  Hammond committed a probation violation shortly before the current offense against M.G. by viewing child pornography on his phone.  Among others sites, he had viewed several Web sites showing young girls with adult men fondling their feet as well as adult men having sex with young girls.

As early as age 11, he exhibited "sexualized behavior" inappropriate for his age. He sometimes attempted to touch adults in inappropriate ways and is documented as trying to grab his teacher's foot.  An evaluation of Hammond at age 12 again discussed inappropriate sexual behavior, difficulty in social interactions, and speech delays.  All of this evidence demonstrates Hammond's lifelong proclivity for acting on his inappropriate sexual impulses.

Hammond argues that he suffers from severe mental impairments.  Hammond has presented evaluations and assessments from his teachers and counselors in grammar and high school.  They document that Hammond had limited interpersonal skills and "language delays."  An evaluation concluded Hammond had Attention Deficit Hyperactivity Disorder and a developmental speech disorder.  A mental health assessment at age 16 found Hammond had "significant difficulty expressing himself verbally" as well as communicating with others.  His "processing is slow."

Hammond was evaluated by three psychologists prior to trial.  One evaluation found he had an I.Q. score of 70, at the upper end of the very low range.   He had an expressive language disorder since childhood but had no psychological disorders.  The evaluation found no diagnosis of "mental retardation."  Another evaluation concluded "Hammond's most glaring deficit is in his understanding of social norms."

Despite his mental impairments, Hammond was able to successfully complete automotive repair vocational courses in prison and adult school.

10

Hammond cites to United States Supreme Court cases limiting sentences for juvenile and intellectually disabled offenders under the Eighth Amendment. (See *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*) [holding the Eighth Amendment precluded life imprisonment without parole for a juvenile offender convicted of a non-homicide offense because of a juvenile's "lessened culpability" and greater capacity for change]; *Miller v. Alabama* (2012) ___ U.S. ___, 132 S.Ct. 2455 (*Miller*) [holding mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishment]; *Atkins v. Virginia* (2002) 536 U.S. 304 (*Atkins*) [holding the Eighth Amendment precluded execution of a mentally handicapped offender because he did not act with the level of moral culpability of other offenders].)

*Graham* and *Miller* are based on the premise that "children are constitutionally different from adults for the purpose of sentencing." (*Miller*, *supra*, 132 S.Ct. at p. 2464.) Juveniles have diminished culpability and a greater prospect for reform. (*Ibid.*) In reaching this conclusion, the Supreme Court relied, in part, on both psychology and brain science which demonstrate the fundamental differences between juvenile and adult minds. (*Ibid.*)

Hammond argues that while he is an adult in physical age, his mental age is closer to that of an adolescent. Even if this were true, Hammond was a 31-year-old adult when he committed the present crime. There is no evidence that Hammond's brain development was akin to that of a juvenile. He simply does not have the diminished culpability or prospect for reform of a juvenile offender. As respondent argues, Hammond has presented no authority for treating someone who functions like a juvenile the same as someone who is, in fact, a juvenile under the law. Thus, Hammond's attempt to analogize his mental functioning to a juvenile fails.

Relying on *Atkins*, Hammond next argues that while his intellectual capabilities are " 'above' that' of mental retardation," he suffers from borderline intellectual functioning that diminishes his personal culpability. Even if we accept that Hammond suffers with lack of impulse control, understanding peer responses and social cues, and

11

poor communication skills, this does not equate with the type of mental disability addressed by the court in *Atkins*. " 'Mental retardation refers to substantial limitations in present functioning. It is characterized by significantly subaverage intellectual functioning" along with limited social skills. (*Atkins*, *supra*, 536 U.S. at p. 308, fn. 3, quoting Mental Retardation: Definition, Classification, and Systems of Supports 5 (9th ed. 1992).) These limitations diminish the personal culpability of a mentally disabled adult. (*Id.* at p. 318.)

Hammond has presented no evidence that his intellectual functioning is akin to an intellectually disabled adult. To the contrary, a competency evaluation in 2012 concluded Hammond is not "mentally retard[ed]," but does have borderline intellectual functioning and an expressive language disorder. The trial court found Hammond had managed to be "pretty much self sufficient in his life" and he had completed vocational courses in prison. In addition, there is no evidence in the record that Hammond's low intellect and poor communication skills played a role in his offense. (See *People v. Young* (2005) 34 Cal.4th 1149, 1231 [holding imposition of the death penalty was not grossly disproportionate where there was no evidence that defendant's low I.Q. or mental disorder played any role in the killings].) Both of Hammond's sexual offenses showed he purposefully approached his victims when they were alone and vulnerable evidencing his personal culpability. A Fairfield police officer testified at trial that when Hammond was arrested for the A.M. incident, he stated there were no security cameras in the area where the incident happened so nobody could have seen him do anything, thereby demonstrating his awareness of his wrongful conduct. (See *Alvarado*, *supra*, 87 Cal.App.4th at p. 200 ["Despite [the] defendant's age, substance abuse, and disorder, he fully recognized and acknowledged the magnitude of his conduct immediately after being caught. Moreover, the callous and opportunistic nature of his sexual assault against a

neighbor he knew to be particularly vulnerable seems to us precisely the sort of sexual offense that warrants harsh punishment."].)**4**

Hammond has failed to demonstrate his intellectual functioning was akin to a intellectually disabled adult or a juvenile making his sentence disproportionate to his crime. (See, e.g., *People v. Castaneda* (2011) 51 Cal.4th 1292, 1345 [holding the defendant failed to establish that his condition—an antisocial personality disorder—was analogous to an intellectual disability or juvenile status for purposes of imposition of the death penalty].)

Hammond's prior criminal conduct—the fact that Hammond committed a similar offense involving another child—weighs against finding his punishment disproportionate. "In considering the nature of the offender, we conclude that [the] defendant's recidivism warrants lengthy incarceration. [Citations.]" (*People v. Martinez*, *supra*, 71 Cal.App.4th at p. 1512.) This is Hammond's second offense which was committed while he was on parole and wearing a GPS anklet.

"In short, in considering the nature of the offenses and the offender, we conclude the punishment imposed upon [the] defendant, one who commits repeated molestations against small children, is not disproportionate to his culpability." (*People v. Christensen*, *supra*, 229 Cal.App.4th at p. 807.) Hammond qualifies as " 'precisely the type of offender from whom society seeks protection by the use of recidivist statutes.' " (*People v. Sullivan*, *supra*, 151 Cal.App.4th at p. 570, quoting *People v. Ingram* (1995) 40 Cal.App.4th 1397, 1415.)

Hammond has failed to demonstrate that his sentence is so disproportionate to his crimes to be unconstitutional. (See *Dillon*, *supra*, 34 Cal.3d at pp. 477–478.) While we recognize that Hammond's sentence is severe, it is not so severe or disproportionate to shock the conscience or offend fundamental notions of human dignity. It is therefore not our role to alter it.

---

**4** Additionally, *Atkins* involved the constitutionality of executing an intellectually disabled individual and Hammond is not facing the death penalty.

## 2. Cruel and Unusual Punishment Under the United States Constitution

Eighth Amendment disproportionality is very narrow. (*Ewing*, *supra*, 538 U.S. at p. 20.) Successful grossly disproportionate challenges are " 'exceedingly rare' " and appear only in an " 'extreme' " case. (*Lockyer v. Andrade* (2003) 538 U.S. 63, 73.)

A proportionality analysis requires consideration of the gravity of the offense and the harshness of the penalty as well as sentences in the same jurisdiction and the sentences imposed for commission of the same crime in other jurisdictions. (*Solem v. Helm* (1983) 463 U.S. 277, 292.) "But it is only in the rare case where a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality that the second and third criteria come into play." (*People v. Meeks*, *supra*, 123 Cal.App.4th at p. 707, quoting *Harmelin v. Michigan* (1991) 501 U.S. 957, 1005 (conc. opn. of Kennedy, J.).)

In *Ewing*, Gary Ewing was sentenced to a term of 25 years to life under California's Three Strikes law for stealing three golf clubs priced at $399 each, as theft with prior convictions for theft and burglary. (*Ewing*, *supra*, 538 U.S. at pp. 18, 20.) The United States Supreme Court applied the principles of gross disproportionality and deference to legislative policy choices to conclude that Ewing's sentence of 25 years to life "is not grossly disproportionate and therefore does not violate the Eighth Amendment's prohibition on cruel and unusual punishments." (*Id.* at pp. 30–31.) Similarly, Andrade was sentenced under California's Three Strikes law to two consecutive terms of 25 years to life on two counts of petty theft with prior theft-related convictions. (*Lockyer v. Andrade*, *supra*, 538 U.S. at p. 68.) On habeas corpus review, the United States Supreme Court rejected Andrade's claim that his sentence violated the prohibition against cruel and unusual punishment, holding "it was not an unreasonable application of our clearly established law for the California Court of Appeal to affirm Andrade's sentence of two consecutive terms of 25 years to life in prison." (*Id.* at p. 77.)

Hammond's sentence as a recidivist sex offender is not "grossly disproportionate" to his crime of a lewd act upon a child under age 14. As the Supreme Court stated in the context of the Three Strikes law: "When the California Legislature enacted the three

14

strikes law, it made a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime. Nothing in the Eighth Amendment prohibits California from making that choice." (*Ewing*, *supra*, 538 U.S. at p. 25.)

In considering the gravity of the offense, the *Ewing* court looked not only to Ewing's current felony, but also to his criminal history. The court stated "[a]ny other approach would fail to accord proper deference to the policy that judgments find expression in the legislature's choice of sanctions. In imposing a three strikes sentence, the State's interest is not merely punishing the offense of conviction . . . '[i]t is in addition the interest . . . in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.' " (*Ewing*, *supra*, 538 U.S. at p. 29, quoting *Rummel v. Estelle* (1980) 445 U.S. 263, 276.)

Hammond's crime certainly is more serious than the theft of golf clubs in *Ewing* or other nonviolent offenses. (See *People v. Mantanez*, *supra*, 98 Cal.App.4th at pp. 364-365 [term of 25 years to life under the Three Strikes law for a nonviolent offense does not constitute cruel and unusual punishment].) It is also more serious than the simple failure to register as a sex offender (*In re Coley*, *supra*, 55 Cal.4th at p. 530 [imposition of a 25-year-to-life sentence for failing to register as sex offender does not constitute cruel and unusual punishment in violation of the federal Constitution]), or possession of drugs (*Harmelin v. Michigan*, *supra*, 501 U.S. at p. 961 [life without possibility of parole sentence for possession of 672 grams of cocaine not cruel and unusual].) It is significant that Hammond was convicted of the same offense against a young girl previously. Given the seriousness of the current offense and his prior offense, his sentence is not grossly disproportionate and does not present the "exceedingly rare" case of cruel and unusual punishment under the Eighth Amendment.

A lengthy prison sentence for a repeat offender, pursuant to a recidivist statute, does not constitute cruel and unusual punishment. (*Harmelin v. Michigan*, *supra*, 501 U.S. at p. 996; *Rummel v. Estelle*, *supra*, 445 U.S. 263.)

15

**B.** *The Court Did Not Abuse Its Discretion in Imposing a Restitution Fine*

On appeal, Hammond argues that the court was required to hold a hearing on his ability to pay a restitution fine, and the matter must be remanded for the trial court to conduct such a hearing.

We review the imposition of a restitution fine for an abuse of discretion. (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1320.)

"In setting a felony restitution fine, the court may determine the amount of the fine as the product of the minimum fine pursuant to paragraph (1) [setting forth amounts] multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted. [¶] . . . The court shall impose the restitution fine unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record. A defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine. Inability to pay may be considered only in increasing the amount of the restitution fine in excess of the minimum fine." (§ 1202.4, subds. (b)(2), (c).)

The court shall consider a number of factors when determining the amount of the fine including "the defendant's inability to pay, the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the defendant as a result of the crime, the extent to which any other person suffered losses as a result of the crime, and the number of victims involved in the crime . . . ." (§ 1202.4, subd. (d).) The losses may include "intangible losses, such as psychological harm caused by the crime." (*Ibid*.) The court is not required to make express findings as to the factors bearing on the amount of the fine and a separate hearing is not required. (*Ibid.*) It is the defendant's burden to show his inability to pay a restitution fine. (*Ibid.*)

At sentencing, the court ordered Hammond to pay a restitution fine in the amount of $10,000. Counsel raised no objection. After the court reserved the issue of restitution

16

pursuant to section 1202.46,[5] and discussed sentencing credits and sex offender registration, it ordered Hammond to pay a court security surcharge of $40 and a criminal conviction fee of $30. Counsel then stated: "I would object on the basis that he has no ability to pay." The court noted the objection but left its order unchanged.

As an initial matter, respondent asserts that Hammond has forfeited this claim by failing to raise it below. A defendant forfeits a claim based on his inability to pay by failing to raise it at the time of sentencing. (*People v. Nelson* (2011) 51 Cal.4th 198, 227 [the defendant could have objected at the time the fine was imposed if he believed inadequate consideration was being given to his inability to pay].)

From our review of the record, it is unclear if counsel's objection after the court imposed the court fees was meant to address only the $70 at issue or the larger issue of the restitution fine. We need not resolve this factual issue because even if we address the claim on the merits, it fails. Hammond has failed to carry his burden of demonstrating his inability to pay. Hammond's argument that he was "denied the opportunity to meet [his] burden" and "not provided any opportunity to argue the issue" is meritless. Hammond filed a 16-page sentencing motion with 47 pages of exhibits where he could have addressed his inability to pay. The court is required to impose a restitution fine unless it finds "compelling and extraordinary reasons for not doing so." (§ 1202.4, subd. (c).) It was therefore no surprise that the court would impose a fine at sentencing and that the fine would be substantial given the statutory formula and the mandatory sentence of imprisonment required in this case.

Hammond's attorney did not request a hearing on Hammond's ability to pay, and failed to present any evidence that he would be unable to pay the fine. The evidence before the court supported an implied finding that Hammond had the ability to pay. " '[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's *present* ability but may consider a defendant's

---

[5] Section 1202.46 provides when the economic losses of the victim cannot be ascertained at the time of sentencing, the court may retain jurisdiction for purposes of a restitution order. (§ 1202.46.)

ability to pay in the future.' " (*People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837, quoting *People v. Frye* (1994) 21 Cal.App.4th 1483, 1487, original italics.)  This includes the defendant's ability to obtain prison wages.  (*People v. Hennessey*, at p. 1837.)  Given Hammond's completion of adult school and automotive courses in prison, the court could properly conclude Hammond had the ability to earn prison wages.

In *People v. Gamache* (2010) 48 Cal.4th 347, our Supreme Court rejected a similar claim.  The court found the defendant "points to no evidence in the record supporting his inability to pay, beyond the bare fact of his impending incarceration.  Nor does he identify anything in the record indicating the trial court breached its duty to consider his ability to pay; as the trial court was not obligated to make express findings concerning his ability to pay, the absence of any findings does not demonstrate it failed to consider this factor.  Thus, we cannot say on this record that the trial court abused its discretion." (*Id*. at p. 409; see also *People v. Nelson*, *supra*, 51 Cal.4th at p. 227.)

There is no evidence that the trial court failed to consider Hammond's inability to pay or the other factors in calculating the amount of the restitution fine.  We find no abuse of discretion.

## IV.

## DISPOSITION

The judgment is affirmed.

18

_____
RUVOLO, P. J.

We concur:


_____
REARDON, J.


_____
STREETER. J.

A142892, *People v. Hammond*

19