Filed 11/5/20  P. v. Poindexter CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D076179 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE387798) |
| DANTE POINDEXTER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Robert O. Amador, Judge.  Affirmed.

Charles R. Khoury, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Dante Poindexter admitted that during a group beating of a minor, he (Poindexter) repeatedly hit the victim with a handgun.  As part of a plea bargain, Poindexter pleaded guilty to one count of assault with a deadly

weapon (Pen. Code, § 245, subd. (a)(1))[1] and admitted that he personally used a firearm in the commission of the assault (§ 12022.5, subd. (a)), which he committed for the benefit of, or in association with, a criminal street gang (§ 186.22, subd. (b)(1)).  In exchange, the prosecution agreed to a seven-year "lid" and to dismiss a remaining charge of carrying a concealed firearm in a vehicle (§24500, subd. (a)(1)).  The trial court sentenced Poindexter to seven years and ordered him to pay a $2,100 restitution fine and $224 in other assessments.

Shortly after he was sentenced, Poindexter filed a petition to recall his sentence and be resentenced, asserting his punishment was disproportionate to the punishments other judges subsequently imposed on his accomplices. The trial court denied the petition.

Poindexter raises two challenges on appeal.  First, he contends the trial court erred by denying his recall petition.  Because the trial court was not required to ensure that Poindexter's sentence was proportionate to his accomplices' sentences, this contention lacks merit.  Moreover, Poindexter has not shown that the trial court erred in determining his sentence was, in fact, proportionate.

Second, Poindexter contends the trial court's imposition of monetary assessments without first determining his ability to pay them violated his due process rights as enunciated in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).  We conclude Poindexter forfeited this challenge by failing to raise it at sentencing, which occurred five months after *Dueñas* was decided. Further, in light of evidence in the record indicating Poindexter's ability to

---

[1]     Further undesignated statutory references are to the Penal Code.

2

pay, he has not established this forfeiture resulted from ineffective legal representation.

Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]
### *The Assault*

Between approximately 9:30 and 10:30 p.m. on November 11, 2018, 19-year-old Poindexter and about nine companions went to a large house party in Lakeside.  Poindexter and three of his companions—Diego Andrade, Marquis Harris, and Kelvin Wilkerson—became involved in a two-part fight that led to the charges at issue here.  The first part of the fight was captured on cellphone video (which we have viewed); the second part was not.

The first part of the fight arose about 10 minutes after Poindexter's group arrived, when the hostess announced the party was over and began asking guests to leave.  Andrade "got up in her face and tried to swing at her," but Sebastian B. (a minor) intervened and placed himself between the two.  Sebastian turned away from Andrade to move the hostess away, and "was assaulted by [Poindexter's] group."

After the first part of the fight, Poindexter's group left, and Sebastian washed blood from his face.

The second part of the fight began a few minutes later when Poindexter and Andrade returned carrying handguns, which they used to hit Sebastian in the head.  Sebastian fell to the ground and Poindexter's group punched and kicked him in his head and face.  Once the beating stopped, Andrade fired one round into the ceiling, and the group dispersed.

---

2     The parties base their factual summaries, in part, on the probation report.  We will do the same.

Sebastian and several witnesses reported hearing the group yell apparent gang references during the assault. Poindexter, Andrade, and Harris (but not Wilkerson) were members or associates of a criminal street gang called "48 mob."

Police did not identify Poindexter and his companions as suspects in the Lakeside assault until about one month later while investigating another crime in El Cajon. Poindexter initially told police he never carried firearms, "he only carried 'knives and fist packers.' "[3] But when police showed him the cellphone video of the assault, he "identified himself in the video 'pistol whipping' the victim several times." Poindexter later acknowledged in his probation interview that he was "at the party and participat[ed] in beating the victim by striking him repeatedly with a pistol." He further confirmed in his initialed and signed change-of-plea form that he "assaulted Sebastian B. with [a] deadly weapon" and "hit [him] with [a] firearm."

### Charges

Poindexter, Andrade, and Harris were jointly charged by complaint with assault with a deadly weapon (§ 245, subd. (a)(1)), with firearm and gang enhancement allegations (§§ 12022.5, subd. (a), 186.22, subd. (b)(1)); and carrying a concealed firearm in a vehicle (§ 24500, subd. (a)(1)).

Wilkerson was charged in a separate case with assault.

### Disposition and Sentencing

#### Andrade

It is unclear from the record whether or how Andrade's charges were resolved. Poindexter has not raised this as an issue in the appeal.

---

[3] Poindexter "described a fist packer as something hard that he puts into his hand and squeezes . . . , so when he hits somebody, it causes greater injury."

## Harris

Harris entered into a plea bargain that addressed his charges in this case and an unrelated robbery case. In this case, Harris agreed to plead guilty to the assault charge and to admit the firearm and gang enhancement allegations, in exchange for a 365-day local sentence, a four-year suspended prison sentence, and dismissal of the remaining charge (concealed firearm in a vehicle).

In the other case, Harris agreed to plead guilty to robbery and to admit a gang enhancement allegation, in exchange for a consecutive 365-day local sentence, a three-year suspended prison sentence, and dismissal of the balance of charges (unspecified in the record).

Harris admitted two strike offenses as part of his plea bargain.

Judge Lamborn accepted Harris's plea in both cases.

## Wilkerson

It is unclear from the record whether Wilkerson pleaded guilty or was convicted after a trial. In any event, the record indicates Judge Thompson sentenced Wilkerson to four years in prison for three separate assaults, one of which was the assault against Sebastian.

## Poindexter

Poindexter entered into a plea bargain under which he pleaded guilty to the assault charge and admitted the enhancement allegations, in exchange for dismissal of the remaining charge and a seven-year lid on any custodial sentence. It appears from the record that Poindexter was unaware of Harris's or Wilkerson's sentences throughout the change-of-plea and sentencing processes. Judge Amador accepted Poindexter's plea and presided over his sentencing.

The probation officer recommended that Poindexter serve 12 years in prison, and pay a $3,600 restitution fine and $224 in other assessments.[4] Poindexter argued in a mitigation statement that the court should grant probation because he had a supportive family, no criminal record, and an expert psychologist who evaluated him opined he was amenable to treatment.[5] Poindexter did not address the recommended fine or assessments. The prosecution argued in its sentencing statement that the court should impose the full seven-year lid based on the circumstances of the offense and Poindexter's continuing dedication to his gang.[6]

---

[4]    There is a discrepancy in the probation officer's report. In the section addressing Poindexter's eligibility and suitability for probation, the probation officer recommends that the court deny probation and sentence Poindexter to *five* years in prison. However, in the section containing the probation officer's overall recommendation, he recommends that the trial court deny probation and sentence Poindexter to *12* years in prison. The overall recommendation is supported by a detailed "Term Recommendation Breakdown by Count" (bolding and underlining omitted) that again recommends a "total prison term [of] 12 years" (bolding and capitalization omitted). The probation officer most likely intended to convey his more detailed overall recommendation of 12 years.

[5]    Poindexter has moved to augment the appellate record to include a psychological evaluation prepared by Raymond Murphy, Ph.D., which was appended to Poindexter's mitigation statement and considered by the trial court. We grant Poindexter's motion to augment.

[6]    The prosecution submitted (1) excerpts from letters Poindexter wrote from jail saying he "won't snitch" and "48 Foe Lyfe"; and (2) photographs from Poindexter's phone showing him flashing gang signs, and holding guns and drugs.

Before pronouncing sentence, the trial court watched the cellphone video of the first part of the assault.[7] The court found it significant that Poindexter had identified himself in the video pistol-whipping the victim, despite having earlier denied ever carrying a firearm. Based on Poindexter's use of a weapon to inflict serious injuries on a minor victim during a coordinated beating by several armed adult gang members, the trial court denied probation and sentenced Poindexter to seven years in prison.[8] The court told Poindexter, "Your attorney did an excellent job of negotiating the case when you consider you are on video committing this crime that looks at easily much more time than this. 24 years. They could have [gone] to trial on this case, and you would be convicted without much question in regards to it."

The court also ordered Poindexter to pay a $2,100 restitution fine (§ 1202.4, subd. (b)) and a corresponding, stayed parole-revocation fine (§ 1202.45); a $40 court operations assessment (§ 1465.8); a $30 criminal

---

[7] The trial court stated it had viewed the cellphone video but that it was not in the court's file. The court therefore directed the prosecutor to "make a disk of that and provide it to the court because the court had that and would consider that as part of the record of this." At the petition hearing, the court confirmed the prosecutor had provided the court a disk containing the cellphone video. Poindexter provided us with a copy of the disk, accompanied by a declaration from his trial counsel establishing the disk's chain of custody.

[8] The sentence consisted of the four-year upper term on the assault conviction, plus the three-year lower term on the firearm enhancement. The court stayed a 10-year gang enhancement.

conviction assessment (Gov. Code, § 70373);[9] and a $154 criminal justice administration fee (Gov. Code, § 29550 et seq.). Poindexter did not object.

The trial court denied Poindexter's subsequent petition to recall his sentence and be resentenced, which we discuss in part I, *post*.

## DISCUSSION

### I. *No Error in Denying the Recall Petition*

Poindexter contends the trial court erred by denying his recall petition because his sentence was disproportionate to his accomplices' sentences. This contention is without merit.

### A. *Background*

About two weeks after he was sentenced, Poindexter filed a petition to recall his sentence and be resentenced. He argued this relief was warranted because he had only just learned of Harris's sentence, which Poindexter maintained rendered his own seven-year sentence disproportionate.

The prosecution opposed Poindexter's petition, arguing (1) the disparity in Poindexter's and Harris's sentences was warranted because Poindexter and Andrade were direct perpetrators, whereas Harris was merely an aider and abettor; (2) Poindexter bragged to Harris in text messages about

---

9    Although trial courts are required to impose a *$30* criminal conviction assessment (Gov. Code, § 70373, subd. (a)(1)), the reporter's transcript indicates the trial court imposed a *$50* assessment. However, both the sentencing minutes and the abstract of judgment reflect the correct *$30* assessment. "Under the circumstances, we will deem the minute order and abstract of judgment to prevail over the reporter's transcript. [Citations.] The erroneous statement in the reporter's transcript is of no effect." (*People v. Cleveland* (2004) 32 Cal.4th 704, 768; see *People v. Thompson* (2009) 180 Cal.App.4th 974, 977-978; *People v. Smith* (1983) 33 Cal.3d 596, 599 [the general presumption that the oral pronouncement controls discrepancies is not "a mechanical rule"].)

numerous "easy robberies" Poindexter had arranged for Harris and his friends; and (3) Poindexter remained dedicated to his street gang.

Before the hearing on his petition, Poindexter filed a supplemental brief attaching documents showing his progress while in custody. In addition, to rebut the prosecution's assertion that Poindexter and Andrade were the primary assailants, Poindexter's counsel provided a written summary of what he considered to be key excerpts from an audio-recorded interview of Sebastian (the victim) by the prosecutor. He did not submit the recording, itself.

Counsel portrayed Sebastian's description of his assailants' conduct as follows: Andrade punched Sebastian and hit the back of his head with a snub-nose revolver 10 to 15 times. Poindexter verbally backed-up Andrade, engaged in mutual shoving, went to hit Sebastian with a fist, but was "throw-grabbed" onto a couch.[10] A third assailant, presumably Harris, was "throwing hands with Sebastian." Finally, Wilkerson "punched Sebastian in [the] forehead," leaving a scar.

Poindexter also argued in the supplement—based on a mistaken understanding of the facts—that his sentence was disproportionate in light of the fact Wilkerson had never been charged for his role in the assault.[11]

At the outset of the hearing on the petition, Poindexter's counsel informed the court he had since learned that Wilkerson had, in fact, been

---

[10]  Despite this attempt to downplay Poindexter's role, counsel acknowledged in the supplement that the cellphone video "captures [Poindexter] springing back into action (after having been throw-grabbed by Sebastian onto the couch)" and "using his right arm and fist to attack Sebastian."

[11]  It appears Poindexter's misunderstanding arose from a statement in the probation report that Wilkerson had not been charged.

9

charged and sentenced.  Counsel proceeded to argue that Wilkerson's four-year sentence for *three* assaults was further evidence that Poindexter's seven-year sentence for *one* assault was disproportionate.

Turning to Harris's role, Poindexter's counsel argued "the statement of facts in the Harris plea" undermined the prosecution's claim that he was merely an aider and abettor.[12]  But Poindexter's counsel acknowledged he had watched the partial video of the assault and did not "see someone who looks like Harris physically contacting Sebastian."

Defense counsel attempted to further minimize Poindexter's role in the assault by referring to the excerpts from Sebastian's interview that counsel had summarized in his supplemental briefing.[13]

The prosecutor responded that Wilkerson's sentence was distinguishable because he was not a 48 mob member—he was just a guy

---

[12]    Harris's change-of-plea form states the following factual basis for his plea:  "Committed an assault with a deadly weapon where a gun was used. Done for the benefit of a criminal street gang."

[13]    Poindexter's appellate counsel asserted at oral argument that the trial court had received and considered the audio recording of the interview.  He subsequently clarified that he "misspoke" during oral argument, but that the recording's "contents were read into the record."  The appellate record does not support this assertion.  First, the declaration from Poindexter's trial counsel establishing the chain of custody for the cellphone video (see fn. 7, *ante*), also addressed the audio-recorded interview.  In that declaration, counsel confirmed that he merely "partially summarized" in the supplemental brief "the relevant portions" of the audio-recorded interview (there was no video), which he then "referred to in open court at the hearing." Second, the reporter's transcript of the petition hearing confirms that counsel merely referred to the excerpts he had previously summarized in his supplemental brief.  Because the audio recording of the interview was neither submitted to the trial court nor "read into the record," we have not considered it in resolving this appeal.

"who apparently likes to beat people up, and jumped in with all these other 48 [mob] guys in the initial attack." The prosecutor also reminded the court about the second part of the assault (not captured on video) during which Sebastian "received the vast majority of his [injuries], which included . . . staples and stitches and . . . four everlasting scars."

As between Poindexter and Harris, the prosecutor emphasized Poindexter's role as "the heavy" who was "tutoring" Harris and bragging about numerous robberies. The prosecutor also pointed out that Harris's plea deal admitted two strike priors (thereby exposing him to 25 to life for a future strike offense) and included a seven-year suspended sentence (which would result in him serving, at most, five years).

The prosecutor emphasized Poindexter's and Andrade's roles in the assault put them "in a completely different boat than the other" assailants.

The court acknowledged "there has to be fairness in sentencing, generally." And based on its review of the cellphone video, materials pertaining to Poindexter's sentencing (which the court "recall[ed] . . . vividly"), and Harris's case file, the trial court concluded Poindexter's sentence was fair.

The court observed "there are so many parameters" to consider when comparing codefendants' sentences and "deciding what's fair and what's not fair." Different defendants may have played different roles in committing the offense, and their sentences may be structured differently. For example, although Poindexter was sentenced to an immediate seven-year term, the court noted Harris "receive[d] two strikes, and it's you pay me now, or you pay me later."

The court stated it was "satisfied that when [it] did the sentencing that [it] evaluated all of the appropriate rules of court, that [Poindexter] was not

11

deserving of probation, and that the sentence was appropriate," particularly in light of the exposure he faced. "The court took into consideration [Poindexter's] lack of a prior record, his youth. And the court did not feel, despite what he had to say [in written submissions to the court], that he was remorseful."

Accordingly, the trial court declined to recall Poindexter's sentence and resentence him.

## B. *Legal Principles*

In 1976, the Legislature enacted section 1170, subdivision (d) "as part of the Determinate Sentencing Act." (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 455 (*Dix*).) Section 1170, subdivision (d)(1) (hereafter, section 1170(d)(1)) authorizes a sentencing court to recall a sentence on its own motion, within 120 days, "for any reason rationally related to lawful sentencing." (*Dix*, at p. 456; § 1170(d)(1).)[14] Although section 1170(d)(1) does

---

14      Section 1170(d)(1) states: "When a defendant subject to this section or subdivision (b) of Section 1168 has been sentenced to be imprisoned in the state prison or a county jail pursuant to subdivision (h) and has been committed to the custody of the secretary or the county correctional administrator, the court may, within 120 days of the date of commitment on its own motion, or at any time upon the recommendation of the secretary or the Board of Parole Hearings in the case of state prison inmates, the county correctional administrator in the case of county jail inmates, or the district attorney of the county in which the defendant was sentenced, recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence. The court resentencing under this subdivision shall apply the sentencing rules of the Judicial Council so as to eliminate disparity of sentences and to promote uniformity of sentencing. The court resentencing under this paragraph may reduce a defendant's term of imprisonment and modify the judgment, including a judgment entered after a plea agreement, if it is in the interest of justice. The court may consider postconviction factors, including, but not

not expressly grant defendants the right to *move* the court to recall a sentence, the courts have recognized that defendants may " ' "*invite* the court to exercise its power" ' " to recall and resentence. (*Loper*, *supra*, 60 Cal.4th at p. 1167, italics added; cf. *People v. Kim* (2012) 212 Cal.App.4th 117, 121, fn. 4 [although "a defendant is not entitled to *move* for dismissal" of a strike prior under section 1385, the defendant "may . . . ' "*invite* the court to exercise its power," ' " italics added].)

Notwithstanding the statute's stated goals of "eliminat[ing] disparity of sentences and . . . promot[ing] uniformity of sentences" (§ 1170(d)(1)), it does not *require* that sentencing courts conduct a disparate sentence review. Rather, the statutory language refers to the Legislature's enactment of "[t]he *entire* Determinate Sentencing Act," which provided uniformity "by introducing a scheme of fixed prison terms 'in proportion to the seriousness of the offense as determined by the Legislature' " and by directing the Judicial Council to adopt guidelines for trial courts' use at sentencing. (*Dix*, *supra*, 53 Cal.3d at pp. 456-457; see § 1170.3 ["The Judicial Council shall seek to promote uniformity in sentencing under Section 1170 by [¶] . . . providing

---

limited to, the inmate's disciplinary record and record of rehabilitation while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the inmate's risk for future violence, and evidence that reflects that circumstances have changed since the inmate's original sentencing so that the inmate's continued incarceration is no longer in the interest of justice. Credit shall be given for time served." (§ 1170(d)(1); see *People v. Loper* (2015) 60 Cal.4th 1155, 1160, fn. 2 (*Loper*) ["Read in context, reference to 'the secretary' means the Secretary of the [California Department of Corrections and Rehabilitation."].)

criteria for the consideration of the trial judge at the time of sentencing . . . ."].)[15]

Thus, so long as a defendant's punishment is proportionate to his or her individual culpability (*intra*case proportionality), it need not be proportionate to the punishments imposed in other similar cases *or on codefendants in the same case* (*inter*case proportionality).  (See *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 384, 469 (*Bryant*); *People v. Hoyt* (2020) 8 Cal.5th 892, 955 (*Hoyt*); *People v. Ramos* (1997) 15 Cal.4th 1133, 1182 (*Ramos*) [intercase proportionality is inapplicable regardless of "whether the comparison involves sentences for other, similar crimes or sentences of codefendants"]; *People v. Gurule* (2002) 28 Cal.4th 557, 663 (*Gurule*) [" 'We have consistently rejected the contention that intercase proportionality review is required' [citation], even as to codefendants [citations]."]; *Weddle*, *supra*, 1 Cal.App.4th at pp. 1195-1196 & fn. 3.)

Although section 1170 no longer *requires* that sentencing courts ensure intercase proportionality, nothing *precludes* a sentencing court from considering intercase proportionality when exercising its sentencing discretion.

A trial court's decision whether to recall a sentence "necessarily involves the exercise of discretion."  (*Portillo v. Superior Court* (1992) 10 Cal.App.4th 1829, 1833; see *Dix*, *supra*, 53 Cal.3d at p. 459 ["the court

_____

[15]    Section 1170 *used to* require that the Board of Prison Terms—not the trial court—conduct a disparate sentence review.  (See § 1170, former subd. (f)(1); *People v. Martin* (1986) 42 Cal.3d 437, 441; *People v. Weddle* (1991) 1 Cal.App.4th 1190, 1198, fn. 7 (*Weddle*).)  However, the Legislature eliminated this requirement in 1992.  (Stats. 1992, ch. 695, § 10; see *Williams v. Calderon* (C.D.Cal. 1998) 48 F.Supp.2d 979, 1030, fn. 13; *People v. Boyette* (2002) 29 Cal.4th 381, 466, fn. 22).

14

*may* recall and resentence *on its own initiative*, but *need* not do so"].) We review the decision for abuse of discretion. (*People v. Pritchett* (1993) 20 Cal.App.4th 190, 195.)

### C. *Analysis*

The trial court did not abuse its discretion in declining to recall Poindexter's sentence and resentence him. As in the trial court, the only justification Poindexter invokes on appeal is his assertion that his sentence is disproportionate to the sentences his accomplices received from other judges. The law is clear, however, that no such intercase proportionality is *required*. (See *Bryant, supra,* 60 Cal.4th at p. 469; *Hoyt, supra,* 8 Cal.5th at p. 955; *Ramos, supra,* 15 Cal.4th at p. 1182; *Gurule, supra,* 28 Cal.4th at p. 663; *Weddle, supra,* 1 Cal.App.4th at pp. 1195-1196 & fn. 3.)

Moreover, even though the trial court was not required to conduct an intercase proportionality review, the court did so here with respect to Harris's and Wilkerson's sentences (Andrade had not yet been sentenced). We find no abuse of discretion in the trial court's determination.

First, as to Harris's sentence, the trial court properly recognized that although Harris's plea bargain included a shorter initial custodial term than Poindexter's, it also included a significant suspended prison sentence and subjected Harris to a third-strike sentence for a future strike offense ("you pay me now, or you pay me later"). And although Harris and Poindexter pleaded guilty to the same offense and admitted the same enhancement allegations, the record supports that they may have had differing degrees of culpability. For example, Poindexter and Andrade—but not Harris— initiated the second part of the assault on Sebastian by returning to the house with handguns they then used to pistol-whip the victim.

15

Second, the apparent disparity between Poindexter's and Wilkerson's sentences is easily explained by the fact that Poindexter faced significantly more exposure—*20 years more*—because he admittedly used a firearm during the commission of a gang-related assault. (§§ 12022.5, subd. (a)), 186.22, subd. (b).)

In sum, we find no abuse of discretion in the trial court's effort to ensure "fairness in sentencing, generally." The court thoroughly reviewed the record, vividly recalled the initial sentencing, and was satisfied it had considered the relevant sentencing factors articulated by the rules of court. Thus, the trial court complied with section 1170(d)(1).

## II. *Poindexter Forfeited His* Dueñas *Challenge*

Poindexter contends the trial court's imposition of $2,324 in fines, fees, and assessments without first determining his ability to pay them violated his due process rights as enunciated in *Dueñas*, *supra*, 30 Cal.App.5th 1157.[16] The Attorney General counters that Poindexter forfeited this challenge by failing to raise it at the sentencing hearing, which occurred five months after *Dueñas* was decided. Poindexter acknowledges he was sentenced post-*Dueñas*, but maintains he has not forfeited the challenge because his trial counsel's failure to raise the issue constituted ineffective assistance. We conclude Poindexter forfeited this challenge and has not met his burden of showing the forfeiture resulted from ineffective assistance.

---

[16] In *Dueñas*, *supra*, 30 Cal.App.5th 1157, the Court of Appeal for the Second District, Division Seven, held that imposing assessments and a fine on an indigent defendant violated due process-based rights that ensure access to the courts and bar incarceration based on nonpayment of fines due to indigence. (*Id*. at pp. 1167-1168, 1172.) The issues raised in *Dueñas* are currently before the California Supreme Court. (See *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, No. S257844.)

## A. *Forfeiture*

Poindexter forfeited this challenge for two reasons. First, although courts are split over whether a defendant's failure to assert a due process challenge to monetary assessments at sentencing forfeits the issue for appeal, the courts that have declined to find a forfeiture have generally done so on the grounds the *Dueñas* decision "represent[ed] an unforeseen significant shift in the pertinent law that trial counsel could not have anticipated, thus excusing the failure to raise the issue." (See *People v. Santos* (2019) 38 Cal.App.5th 923, 931.) Here, however, Poindexter was sentenced five months after *Dueñas* was filed. Accordingly, he had no reason not to expressly invoke *Dueñas* as the basis for an inability-to-pay challenge.

Second, wholly apart from *Dueñas*, the statute that authorized the $2,100 restitution fine—which comprises about 90 percent of the $2,324 Poindexter challenges on appeal—expressly authorized the trial court to consider his inability to pay. Specifically, by imposing a $2,100 restitution fine under section 1202.4, subdivision (b), the trial court exceeded the $300 minimum fine, thereby authorizing the court to "consider[]" Poindexter's "[i]nability to pay." (§ 1202.4, subd. (c).)[17] By statute, Poindexter bore "the burden of demonstrating his . . . inability to pay." (§ 1202.4, subd. (d).) "The statute thus impliedly presumes a defendant has the ability to pay and expressly places the burden on a defendant to prove lack of ability." (*People v. Romero* (1996) 43 Cal.App.4th 440, 449.)

---

[17] Section 1202.4, subdivision (c) states in part: "The court shall impose the restitution fine unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record. A defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine. *Inability to pay may be considered only in increasing the amount of the restitution fine in excess of the minimum fine . . . .*" (Italics added.)

17

Poindexter's silence during sentencing in the face of a $2,100 fine he could have challenged on inability-to-pay grounds "is a classic example of the application of the forfeiture doctrine relied upon by the California Supreme Court in numerous criminal sentencing cases decided well before *Dueñas*." (*People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033; see *People v. Nelson* (2011) 51 Cal.4th 198, 227 [applying the forfeiture rule to an unpreserved ability-to-pay challenge to a restitution fine].) And because Poindexter failed to object at sentencing to the $2,100 restitution fine on ability-to-pay grounds, he has forfeited the issue on appeal as to the remaining $224 in challenged assessments. (See *Gutierrez*, at p. 1033 ["As a practical matter, if [the defendant] chose not to object to a $10,000 restitution fine based on an inability to pay, he surely would not complain on similar grounds regarding an additional $1,300 in fees."].)

## B. *Ineffective Assistance of Counsel*

Poindexter has not met his burden of showing that his forfeiture of this challenge resulted from ineffective assistance of counsel. To establish this, Poindexter must show both that (1) his counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) the alleged deficiency was prejudicial in that it is reasonably probable he would have obtained a more favorable outcome absent the deficiency. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688; see *People v. Bell* (2019) 7 Cal.5th 70, 125.) He has not established either prong.

Poindexter has not cited any evidence in the record indicating he is or will be unable to pay the monetary assessments. Thus, he has not shown that his counsel deficiently overlooked a meritorious challenge. (See *People v. Ochoa* (1998) 19 Cal.4th 353, 432 ["Counsel did not perform deficiently for

18

failing to make what would have been a meritless request."]; *People v. Torrez* (1995) 31 Cal.App.4th 1084, 1091 ["A defense counsel is not required to make futile motions or to indulge in idle acts to appear competent."].)

Additionally, although Poindexter suggests in his briefing that his trial counsel could have had no rational, tactical reason for failing to raise the issue, Poindexter also acknowledges his counsel "put all his energy into" attempting to keep Poindexter out of prison. Such tactical decisions rarely constitute deficient performance. (See *People v. Arredondo* (2019) 8 Cal.5th 694, 711.)

Nor has Poindexter shown that he would have obtained a more favorable outcome had his counsel raised an inability-to-pay challenge. Indeed, the record contains plenty of evidence suggesting the contrary is true. Poindexter lived with his mother and her fiancé, was financially supported by his parents, denied any psychological problems, and had a successful work history before his arrest.[18] Moreover, he will likely have the opportunity to earn money during the seven years he is incarcerated. (See *People v. Johnson* (2019) 35 Cal.App.5th 134, 139 ["going forward we know [the defendant] will have the ability to earn prison wages over a sustained period"].)

In short, Poindexter has not established either ineffective assistance of counsel prong. (See *People v. Lewis* (1990) 50 Cal.3d 262, 289 [neither prong satisfied where ineffectiveness claim was "supported by nothing more than bald assertions that counsel should have" acted differently].)

---

18    Although the record indicates Poindexter left a "dish trainer" job at a restaurant "after developing a drug problem," the record also shows he later obtained a dishwashing job while visiting his grandmother in Washington and was "told . . . he is welcome to come back anytime."

## DISPOSITION

Affirmed.

HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DATO, J.

20